Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Koontz, S.J.*

ALVIN KALTMAN, ET AL.                        OPINION BY
                                    SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
v. Record No. 092541                      March 4, 2011

ALL AMERICAN PEST
CONTROL, INC., ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

In this appeal, a husband and wife filed complaints against a pest control company and its employee after the employee allegedly treated the couple's home with a pesticide that was not approved for residential use.  We consider whether the circuit court erred in sustaining demurrers to the homeowners' claims of negligence, willful and wanton conduct, and negligence per se.  The principal issue we decide is whether the alleged acts of the company and employee sound in tort or contract.

BACKGROUND

Since the circuit court decided this case upon a demurrer without an evidentiary hearing, we will summarize the facts as alleged in the pleadings.  Eagles Court Condominium Unit Owners Ass'n v. Heatilator, Inc., 239 Va. 325, 327, 389 S.E.2d 304, 304 (1990)).  In doing so, we consider the facts stated

---

    * Justice Koontz presided and participated in the hearing and decision of this case prior to the effective date of his retirement on February 1, 2011; Justice Kinser was sworn in as Chief Justice on February 1, 2011.

and all those reasonably and fairly implied in the light most favorable to the nonmoving parties, Alvin and Gwendolyn Kaltman ("the Kaltmans"). Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 102, 540 S.E.2d 134, 137 (2001).

In 1996, the Kaltmans hired All American Pest Control, Inc. ("AAPC") to treat and prevent pest infestation at their home on a quarterly basis. On October 23, 2006, AAPC employee Patric J. Harrison performed the Kaltmans' quarterly pest control treatment. At the time, Harrison was not a licensed pesticide technician in the Commonwealth of Virginia.

Three days before treating the Kaltmans' home, Harrison treated a commercial establishment with Orthene pesticide. After applying Orthene at that business, Harrison "fail[ed] to thoroughly clean his pesticide application equipment." As a result, Harrison applied "Orthene dilution as a fan spray" to the baseboards and adjoining floor surfaces throughout the Kaltmans' home, including "the untreated, porous concrete surfaces in the basement and garage."

As the pesticide was being applied, the Kaltmans complained to Harrison about the "unusual and extraordinarily pungent" odor. Harrison told them the smell would dissipate, but it did not. Later that day, the Kaltmans telephoned AAPC to report their concern about the "overwhelming stench" from the pesticide treatment. They were told that Harrison had

2

applied an inappropriate pesticide that had a "very strong and unpleasant odor."

The Kaltmans reported the incident to the Virginia Department of Agriculture and Consumer Services ("VDACS"). During the investigation by VDACS, Harrison admitted that he applied an Orthene dilution to the Kaltmans' home.  Harrison also admitted that he falsified the pertinent work order by documenting that he applied different pesticides.

Laboratory analyses performed by VDACS revealed concentrations of acephate – a key toxic ingredient in Orthene PCO Pellets – in the Kaltmans' home.[1]  Orthene PCO Pellets are not licensed for residential use by VDACS.  The material safety data sheet for Orthene PCO Pellets states the following:  "This product is not for indoor residential use," "is for use in places other than private homes," and "do not treat unpainted masonry floors in poorly ventilated areas such as garages or basements . . . since persistent odor could develop."[2]

---

[1] The Kaltmans allege that exposure to acephate is known to cause irreversible nerve damage and to cause cancer in laboratory animals.

[2] Regulations promulgated by the United States Department of Labor's Occupational Safety and Health Administration require chemical manufacturers and importers to obtain or develop a material safety data sheet for each hazardous chemical they produce or import.  29 C.F.R. § 1910.1200(g) (2010).  These sheets include such information as the physical and health hazards of the chemical, warnings and instructions

AAPC informed the Kaltmans that although the odor from Orthene was unpleasant, it did not represent a health hazard. The Kaltmans therefore made more than a dozen attempts to eradicate the odor by washing the treated surfaces on their hands and knees without using any protective equipment. They also had their home professionally cleaned. However, high concentrations of acephate remained in their home. Because of the "noxious fumes," their home was rendered uninhabitable for a year, they sustained physical and emotional injuries, and they incurred expenses to "remediate" the damage to their home and personal effects.

On September 5, 2008, the Kaltmans each individually filed complaints against AAPC and Harrison in the Circuit Court of Fairfax County. Each complaint contained eleven identical counts. The cases subsequently were consolidated by consent order.

AAPC and Harrison filed motions craving oyer for the service agreement between the Kaltmans and AAPC. The circuit court granted their motions and the "Pest Control Service Agreement" between the Kaltmans and AAPC became a part of the pleadings. This agreement lists the pests to be controlled and states that AAPC agrees "to apply chemicals to control

_____

about the proper use of the chemical, and first aid procedures to employ in the event of improper exposure. Id.

4

above-named pests in accordance with terms and conditions of this Service Agreement.  All labor and materials will be furnished to provide the most efficient pest control and maximum safety required by federal, state and city regulations."

AAPC and Harrison filed demurrers to all the claims asserted against them.  As will be discussed in more detail, the circuit court sustained the demurrers to the Kaltmans' claims of negligence (Counts One, Two, and Three), willful and wanton conduct (Counts Four and Five), and negligence per se (Counts Ten and Eleven).[3]  The Kaltmans appeal.

                              DISCUSSION

The principles guiding our resolution of the issues presented in this appeal are well-established.  The purpose of a demurrer is to determine whether a complaint states a cause of action upon which relief may be granted.  Tronfeld v. Nationwide Mutual Ins. Co., 272 Va. 709, 712-13, 636 S.E.2d 447, 449 (2006).  A demurrer admits the truth of all properly pleaded facts to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations.  Dodge v. Randolph-Macon Woman's College,

_____

[3] Counts Six, Seven, Eight, and Nine alleging negligent infliction of emotional distress and nuisance were ultimately non-suited by the Kaltmans even though the circuit court had denied AAPC's and Harrison's demurrers to these counts.

5

276 Va. 1, 5, 661 S.E.2d 801, 803 (2008).  A demurrer tests the legal sufficiency of facts alleged in the pleadings, but not the strength of proof.  Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).  Because the decision whether to grant a demurrer is a question of law, we review the circuit court's decision de novo.  Mark Five Construction, Inc. v. Castle Contractors, 274 Va. 283, 287, 645 S.E.2d 475, 477 (2007).

## I. Negligence

The Kaltmans' first assignment of error asserts that the circuit court erred in sustaining demurrers to their negligence counts (Counts One, Two, and Three).  Count One alleges that AAPC was negligent and breached its duty to exercise the skill and diligence of a reasonably prudent pest control company by authorizing and allowing Harrison to apply commercial pesticide without a commercial pesticide certification or without first being registered as a pest control technician as required by former Code § 3.1-249.52(A)(1994).[4]  Count Two alleges that AAPC is vicariously

---

[4] Former Code § 3.1-249.52(A), which was repealed and replaced effective on October 1, 2008 by Code § 3.2-3930(A), stated in relevant part: "No person shall, in exchange for compensation of any kind . . . use, except under supervised conditions of training for certification, or supervise the use of any pesticide without first obtaining certification as either a commercial applicator or registered technician in accordance with regulations promulgated by the Board."  Code

liable under the doctrine of respondeat superior for the negligence of its employee Harrison, who was acting within the scope of his employment when he applied a pesticide that was not licensed and appropriate for use in residential settings. Count Three alleges that Harrison was negligent in that he had a duty to exercise the skill and diligence of a reasonably prudent pest control technician, but he breached that duty by improperly applying a pesticide that was not licensed and approved for use in a residential setting, and by applying a commercial pesticide without a commercial pesticide certification or without first being registered as a pest control technician as required by Code § 3.2-3930(A).  All three counts allege that the Kaltmans were injured as a proximate result of AAPC's and Harrison's negligence.

The Kaltmans assert that, independent of the service contract, AAPC and Harrison were required to exercise prudence in their application of pesticides to the Kaltmans' home.  The Kaltmans stress they are not seeking recovery for damage caused by a failure of AAPC and Harrison to control pest infestation in their home.  Rather, the Kaltmans maintain they are claiming personal injuries and damages to their property

---

§ 3.2-3930(A) features substantially similar language. Accordingly, we will hereafter cite the current Code section.

resulting from breaches of duties imposed by the common law and statutes.

In response, AAPC and Harrison contend that because their duties arose from the service contract the Kaltmans cannot maintain a cause of action for negligence against them. AAPC and Harrison accept that the company assumed a contractual duty to apply the appropriate pesticide to the Kaltmans' home. But this duty, according to AAPC and Harrison, exists whether Harrison was licensed or not. And a breach of that duty, AAPC and Harrison maintain, can only give rise to a breach of contract claim. We disagree.

In support of their position, AAPC and Harrison rely primarily on our decisions in Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc., 256 Va. 553, 507 S.E.2d 344 (1998) and Dunn Construction Co. v. Cloney, 278 Va. 260, 682 S.E.2d 943 (2009). In Richmond Metropolitan Authority, a municipal corporation entered into an agreement with a contractor for the construction of a baseball stadium. 256 Va. at 555, 507 S.E.2d at 345. Many years later, the municipal corporation learned that the contractor failed to comply with the design specifications set forth in the contract, despite its prior representations under oath that it completed the construction work. Id. at 556, 507 S.E.2d at 345. As a result, the municipal corporation filed an action

against the contractor, alleging actual and constructive fraud. Id. at 556, 507 S.E.2d at 346.

The issue on appeal was whether the contractor's misrepresentations about its compliance with the contract and its "false applications under oath to induce payments" were "separate and independent wrongs that [went] beyond [the] contractual duties" and supported causes of action for actual and constructive fraud. Id. at 557, 507 S.E.2d at 346. We explained that the determination whether a cause of action sounds in contract or tort depends on the source of the duty violated. Id. at 558, 507 S.E.2d at 347. Because the municipal corporation's allegations of constructive fraud were "nothing more than allegations of negligent performance of contractual duties," we held they were not actionable in tort. Id. at 559, 507 S.E.2d at 347. Likewise, because "each particular misrepresentation by [the contractor] related to a duty or an obligation that was specifically required by the . . . [c]ontract," we held that the contractor's misrepresentations did not give rise to a cause of action for actual fraud. Id.

In Dunn Construction, after the contractor failed to build the front foundation wall of the property owner's house in accordance with the standard required by the building code, cracks appeared in the wall and a portion of it bowed out

9

several inches.  278 Va. at 263, 682 S.E.2d at 944.  The property owner later paid the contractor the amount due under the contract after the contractor falsely assured the owner that he had repaired the defects.  Id. at 263-64, 682 S.E.2d at 944.  The property owner then filed suit against the contractor, seeking damages under theories of breach of contract, negligence, and fraud.  Id. at 264, 682 S.E.2d at 944-45.

On appeal, the issue was whether the contractor's fraudulent act was independent of the contractual relationship between the contractor and the property owner such that the owner could maintain an action for both breach of contract and fraud.  Id. at 266, 682 S.E.2d at 946.  We recognized that "a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages."  Id. at 266-67, 682 S.E.2d at 936 (citing Foreign Mission Bd. v. Wade, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)).  We nonetheless held that the duty breached by the contractor was one arising out of the contract, not out of any common law duties.  Id. at 268, 682 S.E.2d at 947.  Under the contract, the contractor had a duty to construct the foundation wall "in a workmanlike

10

manner according to standard practices." Id. The contractor was required to make repairs under that same duty and, therefore, the contractor's false representation that he had made the repairs related to a duty that arose under the contract. Id. We explained that "[t]he fact that the representation was made in order to obtain payment from [the property owner] does not take the fraud outside of the contract relationship, because the payment obtained was also due under the original terms of the contract." Id.

Most recently, in Abi-Najm v. Concord Condominium, LLC, 280 Va. 350, 354-55, 699 S.E.2d 483, 485 (2010), purchasers of condominiums brought suit against the seller for breach of contract, fraud in the inducement, and violation of the Virginia Consumer Protection Act ("VCPA"), Code § 59.1-196 et seq., after they discovered that the condominiums they purchased did not contain the agreed upon hardwood flooring. Regarding the purchasers' fraud and VCPA's claims, the circuit court sustained the seller's demurrer, finding that the economic loss doctrine precluded a separate action in tort. Id. at 356, 699 S.E.2d at 486.

We considered on appeal whether the purchasers alleged that the seller breached a duty owed to them independent of any of the contractual duties assumed by the seller. Id. at 361, 699 S.E.2d at 489. In doing so, we restated the

11

principles expressed in Richmond Metropolitan Authority and Dunn Construction that whether a cause of action sounds in contract or tort is ultimately determined by the source of the duty violated, and that a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of duty arising in tort. Id. As to the purchasers' VCPA claims, we held the trial court erred in sustaining the demurrers to these claims because the VCPA imposes a statutory duty "not to misrepresent the quality, grade, or style of goods" that exists independent of the contracts. Id. at 362, 699 S.E.2d at 489. We likewise reversed the demurrers to the purchasers' fraud claims. Distinguishing cases such as Dunn Construction and Richmond Metropolitan Authority, we noted that the purchasers alleged that the seller perpetrated a fraud "before a contract between the two parties came into existence," therefore, the duty the seller allegedly breached could not logically find its source in the parties' contracts. Id. at 363, 699 S.E.2d at 490 (emphasis in original).

AAPC and Harrison assert that Abi-Najm is distinguishable from this case because the Kaltmans made no complaint about the company's pre-contract conduct. AAPC and Harrison also assert that the Kaltmans' statutory claims are not akin to the VCPA claims in Abi-Najm because the VCPA expressly provides a

12

right of action for actual damages, whereas the pesticide statutes do not. See Code § 59.1-204. We are not persuaded by these suggested distinctions.

"The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations." Filak v. George, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004). "The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society." Id. "[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Id.

Here, the Kaltmans are seeking redress for injuries to their persons and property as a result of alleged breaches of common law and statutory duties. The Kaltmans contracted with AAPC for the treatment and prevention of pests in their home. Under the terms of that contract, AAPC agreed "to apply chemicals to control" pests in the Kaltmans' home. Just because the application of pesticides is included in AAPC's contractual duty to control pests, it does not follow that the Kaltmans have contracted away their common law and statutory rights. Because the Kaltmans have alleged that AAPC and

13

Harrison breached common law and statutory duties independent of the company's contractual duty to control pests, we hold the trial court erred when it sustained the demurrers to the Kaltmans' negligence counts.

## II. Willful and Wanton Conduct[5]

The Kaltmans' second assignment of error asserts that the circuit court erred in sustaining demurrers to their willful and wanton conduct counts (Counts Four and Five). Count Four alleges Harrison acted recklessly in a manner that amounted to willful and wanton disregard to the Kaltmans' rights. As evidence of this willful and wanton conduct, the Kaltmans allege, among other things, that Harrison acted recklessly by not thoroughly cleaning his pesticide equipment, by applying a pesticide inconsistent with its labeling, and by falsifying the work order. Count Five alleges AAPC is liable for Harrison's reckless actions, and AAPC itself acted recklessly by authorizing and instructing Harrison to apply a commercial pesticide without a license in violation of Code § 3.2-3930, and by ratifying Harrison's falsified work order. The Kaltmans seek damages as a result of the willful and wanton conduct of AAPC and Harrison, including punitive damages.

---

[5] The terms "willful and wanton conduct" and "[w]illful and wanton negligence" are different names for the same tort. See Infant C. v. Boy Scouts of America, Inc., 239 Va. 572, 581-82, 391 S.E.2d 322, 327 (1990).

14

The Kaltmans assert that Harrison showed a reckless indifference to the consequences of his actions when he applied Orthene in violation of the permissible uses set out in its labeling.  The Kaltmans point to Harrison's falsification of the work order as an indication that Harrison knew his conduct probably would cause injury to the Kaltmans. As to AAPC, the Kaltmans maintain that by authorizing and instructing Harrison to apply commercial pesticides without a license, and ratifying the falsified work order, AAPC's conduct also was willful and wanton.

AAPC and Harrison respond by contending that the Kaltmans do not allege any facts that would suggest anything more than an inadvertent oversight by Harrison to "thoroughly clean his pesticide application equipment" when going from a commercial job to a residential job.  AAPC and Harrison assert that the Kaltmans do not allege any facts that Harrison had a conscious awareness of the danger and probable consequences of his actions, and that he recklessly decided to proceed notwithstanding that awareness.  AAPC and Harrison further assert that the facts alleged do not support a theory that AAPC "authorized" and "instructed" Harrison to apply Orthene in the Kaltmans' home.  Thus, AAPC and Harrison maintain that the Kaltmans' allegations cannot support a claim for willful and wanton conduct.  We agree.

"Willful and wanton negligence is action taken in conscious disregard of another's rights, or with reckless indifference to consequences that the defendant is aware, from his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to another." Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999); Harris v. Harman, 253 Va. 336, 340-41, 486 S.E.2d 99, 101 (1997). Each case raising an issue of willful and wanton negligence must be evaluated on its own facts. Alfonso, 257 Va. at 545, 514 S.E.2d at 618; Harris, 253 Va. at 341, 486 S.E.2d at 102.

The facts as alleged indicate that AAPC's unlicensed technician, Harrison, failed to "thoroughly clean his pesticide application equipment" before applying an "Orthene dilution" to the Kaltmans' home. These facts do not support a claim that AAPC and Harrison acted with reckless indifference to the consequences of their actions and with knowledge of circumstances indicating that they would probably cause injury to others. Accordingly, we hold the circuit court did not err in sustaining the demurrers to the Kaltmans' willful and wanton conduct counts.

### III. Negligence Per Se

The Kaltmans' final assignment of error asserts that the circuit court erred in sustaining demurrers to their

negligence per se counts (Counts Ten and Eleven).  Count Ten

alleges AAPC was negligent per se by violating former Code

§ 3.1-249.64(A) (1994), which states, in relevant part, that

"[i]t [is] unlawful for any person to use or cause to be used

any pesticide in a manner inconsistent with its labeling."[6]

The Kaltmans allege that this statute was enacted for public

safety and that the Kaltmans are members of the class of

persons for whose benefit this statute was enacted.  Count

Eleven makes the same allegations against Harrison.  Both

counts allege that as a proximate result of AAPC's and

Harrison's violations of Code § 3.2-3939(B), the Kaltmans were

injured.

The Kaltmans assert that like the VCPA in Abi-Najm, Code

§ 3.2-3939(B) imposes duties on AAPC and Harrison separate and

apart from the contract, and that the violation of this

statute by AAPC and Harrison constitutes negligence per se.[7]

The Kaltmans maintain that Code § 3.2-3939(B) was enacted for

public safety and that they are members of the class of

---

[6] Former Code § 3.1-249.64(A) has been repealed and replaced by Code § 3.2-3939(B) effective October 1, 2008.  The language of Code § 3.2-3939(B) is substantially similar to former Code § 3.1-249.64(A).  Accordingly, we will hereafter refer to the current Code section.

[7] The Kaltmans also contend that the licensing provisions of Code § 3.2-3930 provide a basis for their negligence per se claims.  Counts Ten and Eleven of their complaints make no such allegation.  Therefore, we will not consider this argument on appeal.

persons for whose benefit the statute was enacted.  This is so, the Kaltmans contend, because the purpose for legislation regulating potentially hazardous products such as pesticides is "the need to provide the particular consumer and the general public with a higher and surer degree of protection than is afforded by exclusive recourse to common-law remedies."  McClanahan v. California Spray-Chemical Corp., 194 Va. 842, 851, 75 S.E.2d 712, 717-18 (1953).

Relying on their earlier arguments in opposition to the Kaltmans' negligence claims, AAPC and Harrison contend that the Kaltmans cannot assert a claim for negligence per se for what amounts to a breach of contract.  Assuming, however, that an ordinary negligence cause of action could be asserted against them, AAPC and Harrison maintain that the Kaltmans cannot also assert a claim for negligence per se.  We disagree.

The doctrine of negligence per se represents the adoption of "the requirements of a legislative enactment as the standard of conduct of a reasonable [person]."  Butler v. Frieden, 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967).  The elements of negligence per se are well-established.  First, the plaintiff must prove that the defendant violated a statute enacted for public safety.  MacCoy v. Colony House Builders, Inc., 239 Va. 64, 69, 387 S.E.2d 760, 763 (1990); Virginia

18

Elec. & Power Co. v. Savoy Const. Co., 224 Va. 36, 45, 294 S.E.2d 811, 817 (1982).  Second, the plaintiff must belong to the class of persons for whose benefit the statute was enacted, and demonstrate that the harm that occurred was of the type against which the statute was designed to protect. McGuire v. Hodges, 273 Va. 199, 206, 639 S.E.2d 284, 288 (2007); Halterman v. Radisson Hotel Corp., 259 Va. 171, 176-77, 523 S.E.2d 823, 825 (2000).  Third, the statutory violation must be a proximate cause of plaintiff's injury. Thomas v. Settle, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994); Hack v. Nester, 241 Va. 499, 503-04, 404 S.E.2d 42, 43 (1990).

The first and second of these elements are issues of law to be decided by a trial court, while the third element is generally a factual issue to be decided by the trier of fact. Schlimmer v. Poverty Hunt Club, 268 Va. 74, 79, 597 S.E.2d 43, 46 (2004).  Therefore, in deciding whether the Kaltmans can maintain their negligence per se claims, we will consider whether Code § 3.2-3939(B) was enacted for public safety, whether the Kaltmans are in the class of persons for whose benefit the statute was enacted, and whether their injuries were of the type that the statute was designed to protect.

In McClanahan, we considered whether the former Virginia Insecticide, Fungicide and Rodenticide Law[8] imposed on a manufacturer of a fungicide used to treat apple orchards a duty to warn consumers of the unusual hazards involved with the use of its product. 194 Va. at 850, 75 S.E.2d 717. In doing so, we concluded that the "Virginia insecticide statute" was modeled after the Federal Insecticide, Fungicide, and Rodenticide Act, former 7 U.S.C. §§ 135-135k. Id. We further concluded that at the heart of "both the federal and Virginia statutes lies the need to provide the particular consumer and the general public with a higher and surer degree of protection than is afforded by exclusive recourse to common-law remedies." Id. at 851, 75 S.E.2d at 717-18. Comparing it to the Federal Food, Drug and Cosmetic Act, we found that the Virginia insecticide statute commands a "liberal interpretation" and "that violation of the statute constitutes negligence as a matter of law precluding the need for establishing the common-law elements of negligence. The statute itself creates the standard of conduct required." Id. at 851-52, 75 S.E.2d at 718. We stated that the fact the Virginia insecticide statute imposes a criminal penalty is evidence of the high standard of care exacted of the manufacturer. Id. at 852, 75 S.E.2d at 718. We further

_____

[8] Former Code § 3-198 et seq. (1950).

20

stated that "[i]t was the legislative intent to protect the public against the use of harmful products, whether the harm be to the user, the person or object on which used, or strangers." Id. at 859, 75 S.E.2d at 722.

Since the McClanahan decision in 1953, the General Assembly has amended the insecticide statutes a number of times. Their current form exists as the Virginia "Pesticide Control" Act, Code § 3.2-3900, et seq. (the "Act"). The Kaltmans base their negligence per se claims on the following section of the Act:

> It is unlawful for any person to use or cause to be used any pesticide in a manner inconsistent with its labeling or regulations of the Board, provided that such deviation may include provisions set forth in Section 2 (ee) of the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. § 136 et seq.).

Code § 3.2-3939(B). In deciding whether this statute was enacted for public safety, the statute cannot be read in isolation. It must be construed in conjunction with the other pesticide control statutes. Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957) ("statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement") (citation omitted); see also Evans v. Evans, 200 Va. 76, 84-85, 695 S.E.2d 173, 177 (2010) (citing and quoting Alston v. Commonwealth, 274 Va.

759, 652 S.E.2d 456, 462 (2007)(statutes dealing with a specific subject must be construed together in order to arrive at the object to be accomplished)).

In considering the Act as a whole, we perceive that its dominant purpose has not changed since our decision in McClanahan. For example, the Act still provides a criminal penalty for violation of its provisions. See Code § 3.2-3947. We therefore are of the opinion that the Act was enacted to protect the public against the use of harmful chemicals. Cf. Virginia Elec. & Power Co., 224 Va. at 44, 294 S.E.2d at 817 (finding that the dominant purpose of the Building Code is to provide comprehensive protection of the public health and safety); Butler, 208 Va. at 354, 158 S.E.2d at 123 (finding that the purpose of a dog leash ordinance is to protect the public against hazards created by dogs running at large). Accordingly, we find that Code § 3.2-3939(B) is a public safety statute. Furthermore, as consumers who allegedly were injured as a result of an improper use of a pesticide, the Kaltmans are members of the class of persons for whose benefit the statute was enacted and who suffered an injury of the type against which the statute protects. Because we find the Kaltmans' allegations support the first two elements of negligence per se, we hold that the circuit court erred in

sustaining the demurrers to the Kaltmans' negligence per se counts.

CONCLUSION

For these reasons, we will reverse the judgment of the circuit court sustaining AAPC's and Harrison's demurrers to Counts One, Two, Three, Ten, and Eleven of the Kaltmans' complaints.  We will affirm the court's judgment sustaining AAPC's and Harrison's demurrers to Counts Four and Five of the Kaltmans' complaints.  The case will be remanded for further proceedings in accordance with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>