# The Virginia Beach S.P.C.A., Inc.

### v.

## South Hampton Roads Veterinary Association, et al.

Record No. 821041

Decided April 26, 1985, at Richmond

Present: All the Justices

Joseph L. Lyle, Jr. (Pickett, Lyle, Siegel, Drescher & Croshaw, P.C., on brief), for appellant.

Judith M. Cofield (Guy, Cromwell, Betz & Lustig, P.C., on brief), for appellees.

Amici Curiae: Virginia Veterinary Medical Association (Stephen A. Bryant; David Meade White; White & Blackburn, on brief), for appellees.

American Veterinary Medical Association (Roger G. Wilson (Ill.); Ann R. Platzer (Ill.); Kirkland & Ellis (Ill.), on briefs), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

Complainants, South Hampton Roads Veterinary Association (the Association), together with veterinarians Richard Dailey and A. A. Flynn, sued to enjoin the Virginia Beach S.P.C.A., Inc. (the S.P.C.A.), from operating a full-service veterinary clinic. Following an *ore tenus* hearing, the trial court found that the S.P.C.A.'s operation of the clinic was an *ultra vires* act and constituted the unlawful practice of veterinary medicine, and the court granted an injunction. In this appeal, we need only determine whether the court properly enjoined the unlawful practice of veterinary medicine. Because the complainants prevailed in the court below, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to them.

The Association is a voluntary professional organization composed of area veterinarians.* Doctors Dailey and Flynn are practicing veterinarians in the area, members of the Association, and citizens of the Commonwealth.

The S.P.C.A. is a non-stock, non-profit Virginia corporation which has existed since 1966. It has been granted charitable tax-exempt status by both state and federal law. The S.P.C.A. is an organization dedicated to the prevention of cruelty to animals. Prior to 1981, it operated a shelter for lost or abandoned animals, with limited veterinary care. It was an educational and referral center for spaying and neutering animals, and, when necessary, a place for their humane disposal. Local veterinarians performed the referral surgery either free of charge or for a reduced fee.

On July 13, 1981, however, the S.P.C.A. began operating a full-service animal health care clinic, available to the public. Dr. Clement Bloom, a fully-licensed veterinarian, operated the clinic. The S.P.C.A. paid the salaries of a veterinary assistant and a secretary for Dr. Bloom and furnished him with office space and supplies.

Dr. Bloom was employed by the S.P.C.A. pursuant to a written contract subjecting him to his employer's control. The contract provided that Dr. Bloom accepted his employment "subject to the general supervision and pursuant to the orders, advice and direction of " the S.P.C.A., and that he would perform his duties "to the reasonable satisfaction of " the S.P.C.A.

The S.P.C.A. agreed to pay Dr. Bloom a $25,000 salary for the first year, with a $5,000 increase in each of the three succeeding years. In addition, the doctor was to receive a stipulated percentage of the annual gross receipts and a portion of the charges for spaying and neutering. The S.P.C.A., however, was "entitled to all of the benefits [and] profits . . . arising from or incident to all work, services, and advice of " Dr. Bloom, and the S.P.C.A. established a fee schedule for the doctor's services. Dr. Bloom was not an owner, partner, or officer of the S.P.C.A.

The Virginia Board of Veterinary Medicine (the Board) issued a facility permit to the newly-established clinic. When the permit was issued, however, the Board believed, based upon information furnished by the S.P.C.A., that the clinic's sole purpose was to

---

* The S.P.C.A. questions the Association's standing to maintain this suit. However, because it concedes that Doctors Dailey and Flynn have standing, we need not consider the standing issue.

neuter and spay animals owned by or adopted from the S.P.C.A. Moreover, the Board's executive director testified that, if the Board had known all the facts surrounding the clinic's operation, the clinic would not have qualified for the permit and the Board would not have issued it.

Veterinary medicine is a profession regulated by statute. Code § 54-776 *et seq.* (the Practice Act). Code § 54-786.2 provides that "[n]o person shall practice veterinary medicine in [the Commonwealth] unless such person has a license to do so issued by the Board."

Code § 54-786 defines conduct constituting the practice of veterinary medicine. It reads in pertinent part:

> Any person shall be regarded as practicing veterinary medicine within the meaning of this chapter who . . . for hire, fee, compensation or reward, promised, offered, received or expected, either directly or indirectly, [provides] treatment . . . for the prevention, cure, or relief of any . . . condition of an animal. . . .

Additionally, the Board is empowered "[t]o adopt such regulations to carry out and enforce the provision of [the Practice Act] as may be necessary." Code § 54-784.03(13). It is also authorized "[t]o prescribe reasonable standards of conduct and ethics for the practice of veterinary medicine . . . ." Code § 54-784.03(8).

Pursuant to this grant of authority, the Board adopted Regulations 15 and 21. Regulation 15 reads in pertinent part:

> Unprofessional conduct . . . shall include the following conduct:
>
> . . . .
>
> B. Forming, entering or being employed by a partnership or corporation to practice veterinary medicine in which any other partner or corporation officer is not a licensed veterinarian amenable to professional discipline by the Board. This section shall not apply to partnerships or corporations with any other such person where such other person does not exert any degree of control over the actual practice of veterinary medicine.

Regulation 21 states in pertinent part:

No animal facility will be registered by the Board unless:

. . . .

B. a veterinarian currently licensed by and in good standing with the Board is:

1. the owner, partner or officer of such facility; . . . .

■ Where, as here, a trial court hears the evidence *ore tenus*, its findings are entitled to the weight of a jury verdict and will not be disturbed on appeal unless they are plainly wrong or without evidence to support them. *White* v. *Pleasants*, 227 Va. 508, 512, 317 S.E.2d 489, 491 (1984). We hold that the evidence strongly supports the trial court's finding that the S.P.C.A. was engaged in the unlawful practice of veterinary medicine.

■ Although it acted by and through a licensed veterinarian, the employment contract clearly shows that the S.P.C.A. retained substantial control over the doctor. Moreover, it established and received the clients' fees for the treatment of their animals. Although it may have acted *indirectly*, the S.P.C.A.'s conduct constituted the practice of veterinary medicine as defined by Code § 54-786. *See also Ritholz* v. *Commonwealth*, 184 Va. 339, 35 S.E.2d 210 (1945) (a lay firm employing doctors was held to be unlawfully practicing optometry).

■ Further, the evidence clearly established that the S.P.C.A. violated two of the Board's regulations. One regulation requires that a licensed veterinarian be "the owner, partner or officer" of the veterinary facility. Regulation 21(B). Dr. Bloom was not an owner, partner, or officer of the S.P.C.A. The other prohibits a veterinarian from practicing as the employee of a lay corporation. Regulation 15(B). He was its employee.

■ The S.P.C.A. has not directly challenged the court's finding that it unlawfully practiced veterinary medicine. Instead, it argues that the trial court usurped the Board's function by acting while "[t]hese identical claims" were pending in an administrative proceeding before the Board. The S.P.C.A. also stresses the fact that the Board reissued its license "pending the outcome of" the Board's hearing. In sum, the S.P.C.A. contends that "the court should have allowed the exhaustion of these administrative remedies . . . before closing down the clinic," and that the administrative proceeding constituted an adequate remedy at law.

This argument flies in the face of Code § 54-786.7 which provides that "any person unlawfully practicing veterinary medicine

may be temporarily or permanently enjoined from such unlawful practice by the circuit court of the . . . city where . . . the unlawful practice occurred at the suit of the Board, any member of the Board or *any citizen of this State*." (Emphasis added.) Thus, once a court finds that a person is unlawfully practicing veterinary medicine, it has the discretionary power to enjoin that practice.

When a statute empowers a court to grant injunctive relief, the party seeking an injunction is not required to establish the traditional prerequisites, *i.e.*, irreparable harm and lack of an adequate remedy at law, before the injunction can issue. All that is required is proof that the statute or regulation has been violated. *Carbaugh v. Solem*, 225 Va. 310, 314-15, 302 S.E.2d 33, 35 (1983).

In view of the clear evidence of the S.P.C.A.'s unlawful practice of veterinary medicine, the authority vested in the court by Code § 54-786.7, and the need to protect the public from the possible ills which may result from such unlawful practice, we conclude that the trial court did not abuse its discretion by granting the injunction. Accordingly, the decree of the trial court will be affirmed.

*Affirmed.*