CAPITAL TOOL AND MANUFACTUR-
ING CO., INC., a Virginia
corporation, Plaintiff–Appellant,

v.

MASCHINENFABRIK HERKULES,
Hans Thoma GMBH; Christoph Tho-
ma; Roy A. Ridgeway, Defendants–Ap-
pellees.

No. 87–2608.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 30, 1987.

Decided Jan. 20, 1988.

Douglas Whitfield Davis (Cheryl G.
Ragsdale, Hunton & Williams, Raymond R.
Robrecht, on brief), for plaintiff-appellant.

Roger Keith Rutledge (Rutledge & Rut-
ledge, Gregory L. Lyons, Gerald A. De-
chow, Gardner, Moss & Rocovich, P.C., on
brief), for defendants-appellees.

Before RUSSELL and WILKINS,
Circuit Judges, and BUTZNER, Senior
Circuit Judge.

BUTZNER, Senior Circuit Judge:

Capital Tool and Manufacturing Co.
(Capco), a developer of automated controls
for industrial machinery, brought this ac-
tion against Roy A. Ridgeway, an engineer
formerly employed by Capco and presently
working for Herkules Controls, and against
Maschinenfabrik Herkules, a manufacturer
of industrial machinery and the parent
company of Herkules Controls. Capco con-
tends that Ridgeway is wrongfully using
its trade secrets in his new employment, to
the detriment of Capco and in violation of
his contractual obligations and Virginia's
Uniform Trade Secrets Act, Va.Code
§§ 59.1–336–343 (Repl.Vol.1987). Capco
sought a preliminary injunction to bar
Ridgeway from working for Herkules or
any affiliated company and to order Ridge-
way and Herkules to refrain from disclos-
ing or misappropriating Capco's trade se-
crets. The district court denied the prelimi-
nary injunction. Because the district court
properly exercised its discretion by denying
the preliminary injunction, we affirm.

I

Capco and Herkules entered into a series
of contracts whereby Capco agreed to de-
velop custom automated controls for cer-
tain Herkules notch milling and roll grind-
ing machines and to provide these controls
for a period of at least ten years. Her-
kules, in return, agreed to purchase these
controls from Capco and made a substan-
tial down payment against the delivery of
the prototype models. At the time of this
contract, and for some time afterwards,
Ridgeway was employed as Capco's chief

engineer and devoted most of his time to the development of these controls.

For reasons which are still in dispute, relations between Capco and Herkules deteriorated, and in March 1987 Herkules announced that it considered the contract terminated. Within days Ridgeway terminated his employment with Capco. He accepted a position as president and 50% owner of Herkules Controls, a newly formed affiliate of Maschinenfabrik Herkules. There he is involved in developing a roll grinder control.

When Ridgeway departed for Herkules, Capco's work on the custom notch mill control was almost completed, while its control for the roll grinder was less far along. Capco asserts that it is of little consequence that the roll grinder control was not far advanced, because its controls are constructed at least in part out of what it calls a "flexible modular control system." That means that significant portions of the hardware and software developed for the notch mill control would also be useful for constructing a roll grinder control. Capco is concerned that in his work on the roll grinder control at Herkules, Ridgeway may be improperly using trade secrets he learned while developing the notch mill control.

## II

To show that the denial of injunctive relief was reversible error, Capco advances a three-step argument:

1) Irreparable injury is not a prerequisite for preliminary injunctive relief when a complainant invokes the Virginia Trade Secrets Act.

2) Where an injunction explicitly authorized by state law is sought in a diversity case *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires that state standards governing the issuance of preliminary injunctions be followed.

3) The district court denied an injunction solely because of its mistaken belief that Capco was obliged to show irreparable injury.

The difficulty with Capco's argument lies in its failure to appreciate the difference between final and preliminary injunctions. Capco relies primarily on *Virginia Beach v. South Hampton Roads Veterinary Association,* 229 Va. 349, 329 S.E.2d 10 (1985), and *Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331 (4th Cir. 1983). These cases do indeed illustrate a principle common to both Virginia and federal law: a complainant need not allege or prove irreparable harm when it invokes a statute that authorizes injunctive relief. All that need be proved is a violation of the statute. *Virginia Beach,* 229 Va. at 354, 329 S.E.2d at 13; *Environmental Defense Fund,* 714 F.2d at 338. In each case the complainant proved a statutory violation after a full trial on the merits, and the court properly granted a final injunction to enforce the statute without requiring proof of irreparable harm.

There can be little doubt that the same principle would govern the grant of a final injunction in diversity cases. There is no reason to exclude from *Erie* state substantive law regarding the issuance of final injunctions. This is evident from *Erie's* criticism of *Black & White Taxicab Co. v. Brown & Yellow Taxicab Co.,* 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 618 (1928), which upheld a federal injunction that would have been denied by a state court applying state law of the forum. *See Erie,* 304 U.S. at 73 and 75 n. 11, 58 S.Ct. at 819, 821 n. 11.

But the purpose of a preliminary, as opposed to a final, injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed. 2d 175 (1981). Typically—and this is a typical case—the parties do not provide the court sufficient information to decide the merits of the case when application is made for a preliminary injunction. For this reason a district court must balance the hardship the parties will suffer pending trial according to the factors set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189 (4th Cir.1977).

Although *Blackwelder* dealt with alleged violations of federal law, its principles are applicable to diversity cases. *See Federal Leasing, Inc. v. Underwriters at Lloyd's,* 487 F.Supp. 1248, 1260–61 (D.Md.1980), *aff'd* 650 F.2d 495, 499–500 (4th Cir.1981) (by implication); *accord General Electric Co. v. American Wholesale Co.,* 235 F.2d 606, 608 (7th Cir.1956); 11 Wright and Miller, *Federal Practice and Procedure,* § 2943 at 390–91 (1973).

In any event, there is no great difference between federal and Virginia standards for preliminary injunctions. Both draw upon the same equitable principles. Virginia Code § 8.01–628 provides: "No temporary injunction shall be awarded unless the court shall be satisfied of the plaintiff's equity." This requires the court to examine the plaintiff's right and the existence of impending irreparable injury. *See 1 Barton's Chancery Practice* 654–55 (3d ed. 1926).

It certainly is not the case that Capco was automatically entitled to a preliminary injunction as a matter of right. Even assuming that the Trade Secrets Act lowers the hurdles which must be cleared before a judge has discretion to issue an injunction, the Act leaves the granting of such injunctions in the discretion of the court. In plain terms, it says that actual or threatened misappropriation *may,* not must, be enjoined. Virginia Trade Secrets Act, § 59.1–337. Thus, a consideration of those factors which have traditionally guided the exercise of that discretion, such as the district court undertook in this application for a preliminary injunction, remains not only appropriate, but essential.

The court found that Capco would suffer no irreparable injury if an injunction were withheld until the close of the trial. Because there was no evidence that Herkules will sell the controls Ridgeway develops except on its own machines, the court found that Herkules is not in present or threatened competition with Capco and thus is not in a position to inflict competitive injuries on it.

The district court's findings are not clearly erroneous. Its denial of a prelimi-

nary injunction was well within the bounds of discretion that the law confers on a trial judge.

AFFIRMED.