## CIRCUIT COURT OF FAIRFAX COUNTY

Fidelity National
Title Insurance Co. et al.

v.

Washington Settlement
Group, L.L.C., et al.

September 4, 2013

Case No. CL-2012-4793

BY JUDGE JONATHAN C. THACHER

This matter came to the Court on Defendants' demurrers to Plaintiffs' Second Amended Complaint for Injunctive Relief and Other Damages. After hearing oral argument on Defendant Scott Lee's demurrer and Defendants Washington Settlement Group, L.L.C., and Seung O. Kang, Esq.'s demurrer, the Court took the matters under advisement.

*Background*

This case arises from several purportedly fraudulent real estate transactions, allegedly perpetrated by a terminated title insurance company and its agents. Defendant Washington Settlement Group, L.L.C. ("WSG") entered into a Title Insurance Agency Agreement ("Agency Agreement" or "Agreement") with Lawyers Title Insurance Company ("LTIC"), under which LTIC appointed WSG as its agent solely for the purpose of issuing title insurance commitments, policies, and endorsements on real estate located in Virginia. Defendants Seung O. Kang, Esq. ("Ms. Oh") and Scott Lee ("Mr. Lee"), both Managing Members of WSG, each executed a Personal Guarantee, which was attached and made part of the Agency Agreement. In their Personal Guarantees, Ms. Oh and Mr. Lee each acknowledged that she or he would personally benefit from the Agency Agreement, guaranteed WSG's complete performance, and agreed to indemnify LTIC for any loss sustained under the Agreement. Plaintiffs Fidelity National Title Insurance Company ("Fidelity") (successor by merger to LTIC) and Commonwealth Land Title Insurance Company ("Commonwealth") allege that WSG, Ms. Oh, and Mr. Lee misappropriated and otherwise mishandled escrowed funds of at least $4 million as part of a scheme to enrich themselves and others. This scheme allegedly occurred in connection with real estate closings performed by WSG in its role as Plaintiffs' title agent. As set forth in the complaint, WSG, on behalf of Plaintiffs, issued title insurance commitments and/or title insurance policies related to eight real estate properties: Rambling Road, Wincrest Place, McWhorten Place, Valemount Terrace, Westcott Place, Wisconsin Avenue, Winterset Court, and Werthers Court properties (collectively, the "Properties").

Plaintiffs contend that lending institutions and others deposited certain escrow funds with WSG, but these funds were not properly disbursed to pay off prior mortgages and outstanding judgments. Instead, Plaintiffs allege, some of the escrowed funds were paid to Ms. Oh and Defendant Onyx Investment Services, Inc. ("Onyx"), a terminated Virginia corporation to which Ms. Oh is the registered agent. As a result, Plaintiffs assert that these title insurance commitments and policies subjected Plaintiffs to liability for resulting loss and damage incurred by its insured. Further, Plaintiffs contend that, in an apparent effort to cover their tracks, Defendants have failed to produce many of the records of the subject closings, despite their contractual obligation to do so.

Plaintiffs plead twelve causes of action:

Count I: Intentional Misrepresentation/Fraud (Ms. Oh and Mr. Lee);

Count II: Negligent Misrepresentation/Constructive Fraud (Ms. Oh and Mr. Lee);

Count III: Negligence (Ms. Oh and Mr. Lee);

Count IV: Breach of Contract/Indemnification (WSG);

Count V: Breach of Contract, Guarantees (Ms. Oh and Mr. Lee);
Count VI: Breach of Fiduciary Duty (WSG, Ms. Oh, and Mr. Lee);
Count VII: Unjust Enrichment (Onyx and Ms. Oh);
Count VIII: Conversion (Ms. Oh);
Count IX: Conspiracy (WSG, Ms. Oh, and Onyx);
Count X: Conspiracy (Ms. Oh and Mr. Lee);
Count XI: Preliminary and Permanent Injunction; and
Count XII: Attachment (on property held by BB&T for the benefit of WSG and Ms. Oh).

Mr. Lee demurs to Counts I, II, V, VI, and X. Ms. Oh and WSG demur to Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, and XII.

*Analysis*

## I. *Standard of Review*

In testing the legal sufficiency of a complaint, a demurrer admits as true all properly pleaded material facts, including facts expressly alleged, fairly viewed as impliedly alleged, and those which can be fairly and justly inferred from the facts expressly alleged. *TC MidAtlantic Dev., Inc. v. Commonwealth*, 280 Va. 204, 210, 695 S.E.2d 543 (2010). Virginia is a notice pleading jurisdiction. See Va. Sup. Ct. R. 1:4(d) (2013). Thus, when "[a] complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993) (citing *Hunter v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360 (1918)). Accordingly, on demurrer, the Court does not evaluate the merits of Plaintiffs' claims; rather, the Court only decides whether Plaintiffs' factual allegations are sufficient to state a cause of action upon which relief may be granted. *Almy v. Grisham*, 273 Va. 68, 76, 639 S.E.2d 182 (2007) (citations omitted); see also *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181 (1993). Moreover, pursuant to Virginia Code § 8.01-273, the Court considers only those grounds specifically stated in the demurrer. Va. Code Ann. § 8.01-273; See *TC MidAtlantic Dev.*, 280 Va. at 214.

The Court focuses particular attention on two issues, which are raised in Defendants' demurrers, (1) whether Plaintiffs have properly pleaded causes of action arising in tort that are not precluded by the economic loss rule and (2) whether Plaintiffs have properly pleaded facts sufficient to satisfy the elements of each surviving claim.

## II. *Tort or Contract*

In certain circumstances, a single act or occurrence may support causes of action both for breach of contract and for breach of a duty arising in tort. *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344 (1998) (citing *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144 (1991)). However, "[t]o avoid turning every breach of contract into a tort," Virginia law provides that, in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between parties solely by virtue of contract. *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290 (2007) (citing *Spence v. Norfolk & Western RR.*, 92 Va. 102, 116, 22 S.E. 815 (1895)).

Damages that are incurred as a result of a breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts. *Abi-Najm v. Concord Condo., L.L.C.*, 280 Va. 350, 360, 699 S.E.2d 483 (2010) (quoting *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610 (2004)). "The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society." *Id.* Tort law is not intended to compensate parties for losses suffered as a result of a breach of duties that were assumed only by a contractual agreement. *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55 (1988). Such compensation requires an analysis of the damages that were within the contemplation of the parties when framing their agreement, and, therefore, is appropriately evaluated under contract law. *Id.* The Virginia Supreme Court has further opined:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*McDevitt*, 256 Va. at 558 (internal citations omitted).

Accordingly, the question whether a cause of action sounds in contract or tort requires the Court to first ascertain the source of the duty that Plaintiffs allege Defendants violated. *McDevitt*, 256 Va. at 558. In doing so, the Court determines whether, but for the existence of a contractual agreement, Defendants owed a particular duty to Plaintiffs. See *Augusta*, 274 Va. at 207.

### III. *Claims Subject to Defendants' Demurrers*

(The complaint sets forth seven tort claims in conjunction with Plaintiffs' two claims for breach of contract. For purposes of the Court's analysis, the Court will consider Defendants' demurrers to Plaintiffs' tort claims in a different order than as presented in the complaint.)

### A. *Breach of Fiduciary Duty (Count VI)*

Count VI alleges that WSG, Ms. Oh, and Mr. Lee, as settlement agents in connection with an escrow, settlement, or closing, owed fiduciary duties to Plaintiffs, which they breached in the manner in which they handled the settlements and real estate transactions as Plaintiffs' agents. Additionally, Plaintiffs allege that Defendants breached their fiduciary duties by intentionally making materially false and misleading statements on settlement statements related to these transactions.

To maintain a breach of fiduciary duty claim against WSG, Ms. Oh, and Mr. Lee, Plaintiffs must allege that these Defendants owed them an independent fiduciary duty apart from those duties owed by contract, Defendants breached their duty, and Plaintiffs suffered damages as a result. See *Augusta*, 274 Va. at 208; *Carstensen v. Chrisland Corp.*, 247 Va. 433, 444, 442 S.E.2d 660 (1994).

Mr. Lee argues that Plaintiffs' breach of fiduciary duty claim is nothing more than a redundant action for breach of contract and that no independent duty exists apart from the Agency Agreement. Ms. Oh and WSG acknowledge that Plaintiffs' fiduciary duty claim is based on the provisions of the Virginia Consumer Real Estate Settlement Protection Act, § 55-525.16, et seq. ("CRESPA" or "the Act") (previously codified at Va. Code Ann. §§ 6.1-2.19 through 6.1-2.29, CRESPA was amended and recodified at Va. Code Ann. §§ 55-525.16 through 55-525.32). However, they argue that, while CRESPA allows the State Corporation Commission to seek remedies against a settlement agent who violates its provisions, the Act does not provide a cause of action that would allow any private person to pursue a remedy for the same violations.

CRESPA does not provide for or recognize a private cause of action against a settlement agent who violates its provisions. *First Am. Title Ins. Co. v. Western Sur. Co.*, 283 Va. 389, 397, 722 S.E.2d 637 (2012) ("CRESPA expressly provides a remedy for violations of the statute, but that remedy exclusively provides licensing authorities the ability to fine and/or otherwise penalize settlement agents who violate the statute."). CRESPA was created to "authorize existing licensing authorities in the Commonwealth . . . to require persons performing escrow, closing, or settlement services to comply with certain consumer protection safeguards relating to licensing, financial responsibility, and the handling of settlement funds." *First Am. Title*, 283 Va. at 400 (quoting former Code § 6.1-2.19(B)).

The Act only applies to transactions that involve the purchase or financing of real estate located in Virginia. *Id.* (quoting former Va. Code § 6.1-2.19(C)). However, the question whether a person may bring a private action against a settlement agent under CRESPA is different than whether a private individual may bring an action for breach of fiduciary duty under common law, for fiduciary duties imposed by CRESPA. Notably, CRESPA does not contain an abrogation clause. *Id.* at 398. The Virginia Supreme Court explained, "when the Virginia General Assembly wishes that a statute abrogate a common law right of action, such as one for breach of contract, it must say so expressly." *Id.* at 398 (quoting *First Am. Title Ins. Co. v. Western Sur. Co.*, No. 1:09-cv-403, 2009 U.S. Dist. LEXIS 44231, at *5 (E.D. Va. May 28, 2009)); *Peoples Sec. Life Ins. Co. v. Arrington*, 243 Va. 89, 92, 412 S.E.2d 705 (1992) ("to alter or abrogate the common law policy, the General Assembly must manifest its intent to do so"). Therefore, while CRESPA does not provide for a private cause of action based upon a violation of the Act, Virginia law nonetheless permits a cause of action against a settlement agent, who acts in a fiduciary capacity pursuant to the Act, by assertion of a common law claim, such as for breach of fiduciary duty. Accord *First Am. Title*, 283 Va. at 399-400. Accordingly, the issue before the Court is whether CRESPA imposes a statutory fiduciary duty on Defendants that exists independently from their contractual obligations under the Agency Agreement and Guarantees.

CRESPA expressly requires, "[a]ll funds deposited with the settlement agent in connection with the escrow, settlement, or closing shall be handled in a *fiduciary capacity*." Va. Code Ann. § 55-525.24(A) (2013) (emphasis added). For purposes of the Act:

> "Settlement agent" means a person, other than a party to the real estate transaction, who provides escrow, closing, or settlement services in connection with a transaction related to real estate in the Commonwealth and who is listed as the settlement agent on the settlement statement for such transaction. Any person, other than a party to the transaction, who conducts the settlement conference and receives or handles money shall be deemed a "settlement agent" subject to the applicable requirements of this chapter.

Va. Code Ann. § 55-525.16 (2013). Pursuant to the complaint and attached settlement statements incorporated therein, Mr. Lee provided settlement services for the Rambling Road and Wincrest Place properties, Ms. Oh provided settlement services for the Rambling Road, McWhorten Place, Winterset Court, and Werthers Court properties, and WSG provided settlement services for all eight identified properties, Rambling Road, Wincrest, McWhorten Place, Valemount, Westcott, Wisconsin, Winterset Court, and Werthers Court properties. As alleged, Plaintiffs have sufficiently

pleaded that Mr. Lee, Ms. Oh, and WSG acted as "settlement agents," as defined by § 55-525.16, but only in connection with settlement services that each conducted for real estate located in Virginia. The complaint alleges that the Westcott Place and Wisconsin Avenue properties are located in Maryland and the District of Columbia, respectively. Therefore, Plaintiffs may not rely on Defendants', specifically, WSG's, alleged wrongdoing with regards to these properties to support their breach of fiduciary duty claim.

Notwithstanding, the Court finds that CRESPA establishes a fiduciary duty upon Defendants that is independent from the obligations contracted for by the parties and that Plaintiffs have properly pleaded the existence of such independent fiduciary duty. Indeed, just because the Agency Agreement imposes fiduciary duties on Defendants, "it does not follow that [Plaintiffs] have contracted away their common law and statutory rights." *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 493, 706 S.E.2d 864 (2011). In *Kaltman*, the defendant similarly argued that the plaintiff's claims based upon a statutory duty could not survive because the applicable statute did not expressly provide a right of action for actual damages. 281 Va. at 492. The defendant attempted to distinguish *Abi-Najm*, wherein the duties at issue arose from the Virginia Consumer Protections Act, Va. Code §§ 59.1-196 et seq., which expressly provides for a private cause of action. In rejecting the defendant's argument, the Virginia Supreme Court expressed they were "not persuaded by these suggested distinctions." *Id*. CRESPA establishes that settlement agents act in a fiduciary capacity, thereby owing duties required of a fiduciary under common law, and specifically articulates a settlement agent's duty not to intentionally make any materially false or misleading statement or entry on a settlement statement. Va. Code Ann. § 55-525.25 (2013). These duties are statutory duties that exist "independent of the [Agency Agreement and Personal Guarantees] entered into between the parties to this litigation, *viz*. the duty is 'not one existing between the parties solely by virtue of the contract'." *Abi-Najm*, 280 Va. at 362 (quoting *Dunn Construction Co. v. Cloney*, 278 Va. 260, 267, 682 S.E.2d 943 (2009)); accord *Koschene v. Hutchinson*, 73 Va. Cir. 103, 106 (2007) (court overruled the demurrer to plaintiff's tort claim for breach of fiduciary duty, where plaintiff alleged a settlement agent breached his fiduciary duty by making misrepresentations on HUD-1 settlement statements and failing to distribute escrow funds).

However, Ms. Oh and WSG argue that Plaintiffs do not have standing to pursue a breach of fiduciary duty claim. They contend that the alleged fiduciary duties are owed not to Plaintiffs, but to the parties of the referenced settlement transactions, i.e. the seller, buyer, and any lender that is to be paid off or secured, and Plaintiffs were not any such party. Moreover, Defendants assert that Plaintiffs have failed to allege any loss suffered as a result of the alleged improper settlement transactions, other than payments for claims pertaining to two of the eight properties alleged in the complaint.

The Court notes that the complaint only alleges Mr. Lee acted as Plaintiffs' settlement agent, as defined by § 55-525.16, with regards to the Wincrest Place Property.

Defendants are correct that the fiduciary duties established by CRESPA are owed to the parties of the real estate transaction. See Va. Code Ann. § 55-525.24(A)(1) (2013) ("the funds shall be the property of the person or persons entitled to them under the provisions of the escrow, settlement, or closing agreement. . . ."). See also *First Am. Title*, 283 Va. at 400 ("[t]he issuance of a title insurance policy is a separate transaction and a separate issue from the settlement transaction involving the purchase of or lending on the security of real estate"). However, Defendants' argument fails to acknowledge that, as pleaded, this is a case of subrogation. Pursuant to Virginia Code § 38.2-207:

> when any insurer pays an insured under a contract of insurance which provides the insurer becomes subrogated to the rights of the insured against any other party the insurer may enforce the legal liability of the other party. This action may be brought in its own name or in the name of the insured or the insured's personal representative.

Va. Code Ann. § 38.2-207 (2013).

Plaintiffs argue that, under the issued title insurance policies, they are subrogees to the lenders in these transactions and are entitled to all the rights and remedies their insured claimants may have against any person or property in respect to the claim. Therefore, as subrogees, Plaintiffs step into the shoes of the parties of the real estate transaction and are the real parties in interest in any litigation to enforce those rights to which they have succeeded. See *First Am. Title*, 283 Va. at 401 (citing *Allstate Ins. Co. v. Hechinger Co.*, 982 F. Supp. 1169, 1172 (E.D. Va. 1997), and *In re Hutcherson*, 50 B.R. 845, 851 (Bankr. E.D. Va. 1985) (observing that "Virginia follows the generally accepted view of subrogation that the subrogee steps into the shoes of the insured and is both entitled to assert the rights of the insured and is bound by any defenses valid against the insured")).

Significantly, as subrogees, Plaintiffs' right to recover from Mr. Lee, Ms. Oh, and WSG under their breach of fiduciary duty claim only vests when Plaintiffs have paid out those claims to the insured. See Va. Code Ann. § 38.2-207. Although Plaintiffs have sufficiently put Defendants on notice as to potential claims they may be required to pay in the future, Plaintiffs have only alleged that they have paid out claims pertaining to the McWhorten Place Property (in the amount of $60,000.00) and the Winterset Court Property (in the amount of $370,000.00). As pleaded, Plaintiffs have vested all substantive rights of the insureds for these two properties. Conversely, the complaint contains no allegations that Plaintiffs have paid out claims

on the other four properties relevant to their breach of fiduciary duty claim, including the two properties to which Mr. Lee allegedly conducted services as a settlement agent. As alleged, Plaintiffs have only been "exposed to monetary losses" for the remaining four properties at this time and, therefore, are not yet vested with the substantive rights of the insureds.

Accordingly, Mr. Lee's Demurrer as to Count VI is sustained without prejudice at this time. WSG and Ms. Oh's Demurrer as to Count VI is overruled.

B. *Intentional Misrepresentation/Fraud (Count I)*

Count I seeks relief in tort for the alleged willful concealment and false representations Ms. Oh and Mr. Lee purportedly made as settlement agents in certain real estate transactions. Plaintiffs claim Ms. Oh and Mr. Lee had a duty not to make false statements of material facts to Plaintiffs and borrowers and lenders in pursuing and executing the eight property transactions. In violation of these duties, Plaintiffs allege Ms. Oh and Mr. Lee failed to disclose and willfully concealed material facts regarding the examination, title, and the clearance of objections, and also illegally administered and misused the escrow funds received from different lenders for the real estate transactions.

The first question the Court considers is whether Plaintiffs have sufficiently alleged that Defendants owed a duty, independent of any of the duties they assumed pursuant to the Agency Agreement and Personal Guarantees, not to intentionally make false statements and misrepresentations. See *Abi-Najm*, 280 Va. at 361.

In addition to establishing that a settlement agent acts in a fiduciary capacity, CRESPA explicitly requires that "[n]o settlement agent shall intentionally make any materially false or misleading statement or entry on a settlement statement." Va. Code Ann. § 55-525.25 (2013). Accordingly, the statute establishes a duty upon a settlement agent not to intentionally make any materially false or misleading statement or entry on a settlement statement. CRESPA defines "settlement statement" as a statement of receipts and disbursements for a transaction related to real estate, which includes a statement prescribed under the Real Estate Settlement Procedures Act of 1974 (RESPA) (12 U.S.C. § 2601 et seq.), as amended, and the regulations thereunder. Va. Code Ann. § 55-525.16.

Plaintiffs' claim for fraud is not one that is comprised of allegations where each particular misrepresentation related to a duty or an obligation that was specifically and solely required by the contract. *Cf. McDevitt*, 256 Va. at 559. Indeed, but for the existence of the Agency Agreement and Personal Guarantees requiring Defendants to conduct settlements and transactions in compliance with the applicable law, Defendants are still required to comply with those duties set forth under the applicable law, e.g., CRESPA. Under the Agency Agreement, WSG must comply with all

requirements established by Plaintiffs regarding search and examination of title, and the clearance of objections or exceptions to title, prior to binding Plaintiffs under any title commitment, policy, or endorsement. Further, the Agreement requires WSG to conduct any settlements and closings of transactions, in which Plaintiffs are issuing title insurance policies, in accordance with prudent practice, requirements established by Plaintiffs, instructions of the parties, and the laws and applicable governmental regulations. Along that same line, the Agreement also requires WSG to comply with all applicable statutes, rules, and regulations relating to the conduct of WSG's business. Plaintiffs have sufficiently alleged that Mr. Lee and Ms. Oh intentionally made false statements on certain HUD-1 settlement statements, in violation of the statutory duties required of them as settlement agents under CRESPA. Accordingly, Defendants' demurrers to Plaintiffs' claim for actual fraud will not be sustained on the basis that the fraud claim is precluded by the economic loss doctrine.

However, to maintain a cause of action for actual fraud, Plaintiffs bear the burden of proving, by clear and convincing evidence, the following elements: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *McDevitt*, 256 Va. at 557-58 (citing *Evaluation Research.Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387 (1994)). Because fraud must be clearly proved, the allegations in support of these elements must be distinctly stated. *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295, 467 S.E.2d 778 (1996). Accordingly, the Court must determine whether Plaintiffs have sufficiently pleaded, with the requisite particularity, that Mr. Lee and Ms. Oh intentionally and knowingly made false representations of material fact on settlement statements and that they did so with the intention to mislead Plaintiffs and Plaintiffs relied on such misrepresentations and suffered damages as a result.

Upon thorough review of the complaint and the attached, incorporated settlement statements, the Court finds that Plaintiffs have alleged Mr. Lee and Ms. Oh each intentionally and knowingly made misrepresentations on settlement statements with the intent to mislead Plaintiffs and that Plaintiffs reasonably relied on such misrepresentations. As discussed in the section above, the Court holds the real estate transactions pertaining to the Wisconsin Avenue and Westcott properties that Defendants conducted as settlement agents do not fall within the scope of CRESPA. Therefore, Plaintiffs have not established that Ms. Oh and Mr. Lee owe them an independent duty, apart from the Agency Agreement and Personal Guarantees, not to intentionally make misrepresentations on settlement statements related to these two properties. As a result, Plaintiffs' actual fraud claim as to the Wisconsin Avenue and Westcott properties is precluded by the economic loss doctrine.

Still, as to the remaining six properties, Plaintiffs must also adequately allege resulting damages from Defendants' alleged intentional misrepresentations. As to the Rambling Road, Wincrest Place, Valemount Terrace, and Werthers Court properties, Plaintiffs claim Mr. Lee's and Ms. Oh's respective intentional misrepresentations resulted in damages in the form of attorneys' fees and costs they incurred to investigate the title claims filed, review the WSG settlement files relevant to these properties, and obtain banking records from third parties that WSG and Ms. Oh had failed to maintain and produce. As to the McWhorten Place and Winterset Court properties, Plaintiffs allege the same attorney's fees and costs just described, as well as actual damages of $60,000 and $370,000 for claim amounts they have paid on these properties.

Defendants argue that Plaintiffs cannot recover for attorney's fees involved in investigating properties on which they have never paid money; otherwise, any claim, no matter how frivolous, would be actionable as to damages simply by hiring an attorney to investigate it. Therefore, Defendants aver that Plaintiffs have not adequately alleged any actual damages resulting from any alleged fraud, other than payments on claims related to the McWhorten Place and Winterset Court properties. Moreover, Defendants contend that, because damages for fraud must be pleaded with specificity and Plaintiffs have failed to allege a specific dollar figure for those investigative fees and costs they allegedly incurred, Plaintiffs' fraud claim cannot survive demurrer.

It is well settled that "[n]either fraud nor damage can be presumed, and the allegation of a mere purpose to commit fraud cannot be made the basis of an action. The purpose must be consummated, the injury inflicted." *Lloyd v. Smith*, 150 Va. 132, 149, 142 S.E. 363 (1928). To recover for fraud, Plaintiffs must properly allege that the acts of Ms. Oh and Mr. Lee resulted in some loss, damage, detriment, or injury to them. *Rambus, Inc. v. Infineon Techs. AG*, 164 F. Supp. 2d 743, 762 (E.D. Va. 2001) (citing *Lloyd*, 150 Va. at 152). "[T]he rule as to what constitutes damage for fraud, in any case, may broadly be stated to be that there is no damage where the position of the complaining party is no worse than it would be had the alleged fraud not been committed." *Klaiber v. Freemason Assocs.*, 266 Va. 478, 486, 587 S.E.2d 555 (2003) (quoting *Community Bank v. Wright*, 221 Va. 172, 175, 267 S.E.2d 158 (1980) (internal citation omitted)). Therefore, even if Ms. Oh and Mr. Lee intentionally misrepresented a material fact, which Plaintiffs reasonably relied upon, "no cause of action arises unless some damages which are legally recoverable as a result thereof are alleged and shown." *Lloyd*, 150 Va. at 150 (quoting *Hope v. Shirley*, 187 S.W. 973, 974 (Tex. Civ. App. 1916)).

The Court finds that Plaintiffs have alleged resulting damages from the purported intentional misrepresentations made on settlement statements for the McWhorten Place and Winterset Court properties only. Accordingly,

the Court sustains Mr. Lee's demurrer to Count I, without prejudice at this time. WSG and Ms. Oh's demurrer to Count I is overruled.

### C. *Negligent Misrepresentation/Constructive Fraud (Count II)*

To maintain a cause of action for constructive fraud, Plaintiffs must allege that a false representation of a material fact was made innocently or negligently and that they were damaged as a result of their reliance upon the misrepresentation. *Blair Constr. v. Weatherford*, 253 Va. 343, 346, 485 S.E.2d 137 (1997). Significantly, in an action for constructive fraud, "the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." *Id.* at 347 (quoting *Evaluation Research Corp.*, 247 Va. at 148).

Va. Code § 55-525.25, the CRESPA provision this Court relied on in determining that the economic loss doctrine did not preclude Plaintiffs' actual fraud count, is not applicable to Plaintiffs' claim for constructive fraud. This CRESPA provision addresses only those false or misleading statements and entries on settlement statements that are made intentionally. See Va. Code Ann. § 55-525.25. Indeed, the provision expressly excludes "[a]n estimate of charges made in good faith by a settlement agent and indicated as such on the settlement statement" from being deemed a violation under the section. See *id.* Plaintiffs have not identified, and the Court is unable to locate, any applicable Code provision that imposes upon Defendants a statutory duty existing independently from their contractual obligations so as to allow Plaintiffs' constructive fraud claim to survive.

Accordingly, the Court holds that, because the duties allegedly breached under Plaintiffs' constructive fraud claim arose solely from the Agency Agreement and Personal Guarantees, the constructive fraud claim is precluded by the economic loss doctrine. Defendants' demurrers as to Count II are sustained with prejudice.

### D. *Conversion against Ms. Oh (Count VIII)*

In Count VIII, Plaintiffs allege Ms. Oh converted money loaned by lending institutions to the homeowners of certain properties with specific instructions to Ms. Oh and WSG that the money was to be used to pay off prior secured loans. Instead, Plaintiffs allege that Ms. Oh wrongfully diverted this money and used it for her personal benefit, resulting in monetary damages of at least $4 million to Plaintiffs. As pleaded, Plaintiffs have paid claims that were submitted to them from the lenders as a result of the improper actions of Ms. Oh, and Plaintiffs are subrogated to and are entitled to the rights and remedies of these lenders.

On demurrer, Ms. Oh contends that the basis for Plaintiffs' conversion claim is that funds belonging to ING Bank were wrongly converted, not

those funds belong to Plaintiff. Therefore, Ms. Oh argues that no claim for conversion can legally exist because Plaintiffs were required to allege that their own property had been converted. Ms. Oh also contends that Plaintiffs conversion claim is barred by the economic loss doctrine.

The tort of conversion "encompasses any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession, and any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 344, 576 S.E.2d 438 (2003) (internal citations omitted). To recover under the tort of conversion, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 574, 709 S.E.2d 163 (2011) (quoting *Dunn Construction Co. v. Cloney*, 278 Va. 260, 267, 682 S.E.2d 943 (2009)). A cause of action for conversion lies independently of an action in contract and may provide a separate basis, distinct from the contract, upon which one party may maintain an action against another. *Id.* (citing *PGI, Inc.*, 265 Va. at 344).

Having established an independent fiduciary duty apart from the Agreement and Personal Guarantees, the Court holds that the economic loss doctrine does not bar Plaintiffs' conversion claim. See, e.g., *PGI, Inc.*, 265 Va. at 344. Additionally, the Court finds that, as alleged, Plaintiffs have paid claims submitted to them by lenders, who were issued Title Insurance Policies by Ms. Oh and WSG on behalf of Plaintiffs. Therefore, Plaintiffs have sufficiently alleged that they are subrogated to these lenders and entitled to all rights and remedies they would have against Ms. Oh. The facts alleged in the complaint adequately inform the Defendants of the nature and character of Plaintiffs' conversion claim. Accordingly, Ms. Oh and WSG's demurrer to Count VIII is overruled.

### E. *Breach of Contract (Counts IV and V)*

In Count IV, Plaintiffs allege WSG breached its obligations under the Agency Agreement. On demurrer, WSG and Ms. Oh contend that Plaintiffs have not alleged any present obligation to indemnify Plaintiffs for properties where no claims have yet been paid. Therefore, they aver, with the exception of the McWhorten Place and Winterset Court properties, Plaintiffs fail to allege actual damages to support their breach of contract claim against WSG.

In Count V, Plaintiffs charge Ms. Oh and Mr. Lee with breach of contract for allegedly breaching obligations under their respective Personal Guarantees. Ms. Oh asserts the same argument on demurrer as WSG above. Mr. Lee argues three reasons why Plaintiffs may not maintain their breach of contract claim for Mr. Lee's purported breach of the Personal Guarantee. First, in contesting Plaintiffs' standing to maintain a cause of action for

breach of contract based on the Personal Guarantees, Mr. Lee claims that the Personal Guarantee does not identify Fidelity or Commonwealth, and also does not contain a provision that allows for assignment. Consequently, according to Mr. Lee, neither Fidelity nor Commonwealth are permitted to seek indemnity and/or recovery from Mr. Lee under the Personal Guarantee. Second, Mr. Lee contends that the complaint alleges that the actions by Ms. Oh and himself were performed in their individual capacity, as opposed to their corporate capacity on behalf of WSG, and that Plaintiffs do not allege that WSG benefitted from these actions. Therefore, Mr. Lee argues, the Personal Guarantee is inapplicable to require him to indemnify Plaintiffs for actions he allegedly committed outside of his corporate capacity as an agent of WSG. Third, Mr. Lee argues that the Short Form Issuing Agency Contract effective June 22, 2010 ("Short Form Contract"), which named Commonwealth as the new principal, was not signed by Mr. Lee, and so it may not serve as a basis of liability against him. Mr. Lee argues that, because the Short Form Contract and Agency Agreement are in conflict due to the fact that Mr. Lee is not a party to the Short Form Contract, the Personal Guarantee may not be enforced against him.

First addressing Count IV, the Court rejects WSG's argument and finds that Plaintiffs have sufficiently pleaded a cause of action for breach of contract against WSG to withstand demurrer. The Agency Agreement, attached to the complaint and incorporated therein, establishes:

> *Liability of AGENT*: AGENT shall be liable to PRINCIPAL for, and hereby agrees to indemnify PRINCIPAL against any loss, cost, or expense, including attorney's fees and costs of litigation, sustained or incurred by PRINCIPAL and arising from the fraud, negligence, or misconduct of AGENT, or any AGENT, servant or employee of AGENT, whether or not such loss, cost, or expense shall result from any policy issued by AGENT.

2d Am. Compl., Ex. A.

Plaintiffs have alleged multiple breaches of the Agency Agreement, and the losses, costs, and expenses allegedly suffered by Plaintiffs as a result. Accordingly, WSG's demurrer to Count IV is overruled.

As to Count V, taking Mr. Lee's arguments in turn, the Court first holds that Plaintiffs' complaint sufficiently alleges that Mr. Lee (as well as WSG and Ms. Oh) have a legally enforceable obligation to Fidelity. The Agency Agreement provides:

> This Agreement and any rights or interest arising hereunder shall not be transferred or assigned by either party, *provided, however, that this Agreement shall inure to the benefit of any successor to PRINCIPAL.*

2d Am. Compl., Ex. A, p. 4 (emphasis added). The complaint adequately pleads that Fidelity is the successor to Lawyers Title Insurance Company. 2d Am. Compl. ¶ 11. Therefore, Fidelity is entitled to all rights and interests arising from the Agency Agreement, including those rights and interests arising from the Personal Guarantees.

Second, Plaintiffs sufficiently plead that WSG and its agents and employees, including but not limited to Ms. Oh and Mr. Lee, committed actions that constitute a material breach of the Agreement and Personal Guarantees. Via the Personal Guarantee, Mr. Lee "acknowledges that [he] will personally benefit from the Agency Agreement," and, further:

> [that he] jointly and severally does hereby personally unconditionally undertake, guarantee, and assure the full prompt and complete performance of all the terms, agreement, convents, conditions, and undertaking of the corporate agent as set forth in said Agency Agreement. . . .

2d Am. Compl. Ex. B. Whether Mr. Lee's alleged conduct, in fact, falls outside the scope of his corporate capacity with WSG is not pertinent to the Court's consideration of whether the complaint sufficiently pleads that Mr. Lee's alleged conduct renders him liable under the Personal Guarantee.

Lastly, the Court rejects Mr. Lee's argument regarding a purported conflict between the Short Form Contract and the Agency Agreement on the basis that Mr. Lee did not sign the Short Form Contract. This argument ultimately requires a factual determination that is inappropriate for the Court to consider on demurrer. Accordingly, Defendants' Demurrers to Count V are overruled.

*F. Conspiracy against Ms. Oh, WSG, and Onyx (Count IX) and Conspiracy against Ms. Oh and Mr. Lee (Count X)*

In Counts IX and X, Plaintiffs allege claims of conspiracy to commit fraud. In Count IX, Plaintiffs claim Ms. Oh, WSG, and Onyx conspired to commit fraud against Plaintiffs, whereby Ms. Oh, WSG, and others, improperly made fraudulent statements to steal money from the transactions involving the Rambling Road Property. In Count X, Plaintiffs allege Ms. Oh and Mr. Lee conspired to commit fraud, whereby they improperly made fraudulent statements in order to wrongly convert money from the Wincrest Place Property transactions.

Defendants argue that the intra-corporate immunity doctrine bars both conspiracy claims. Addressing Count IX, WSG and Ms. Oh reason that, because Ms. Oh is alleged to be the managing member of WSG, she cannot have conspired with WSG. Likewise, because Ms. Oh is allegedly the registered agent of Onyx, Ms. Oh and WSG contend she also may not have conspired with Onyx. Moreover, WSG argues it cannot have conspired

with Onyx either, because, as alleged, Onyx as a corporate entity has been terminated by the State Corporation Commission, and only "exists" via its registered agent, Ms. Oh. With regards to Count X, Ms. Oh and Mr. Lee claim that, because Plaintiffs have pleaded that Ms. Oh and Mr. Lee were members and employees of WSG, Plaintiffs have essentially alleged that Ms. Oh was an agent of Mr. Lee, and vice versa. Under this theory, Ms. Oh and Mr. Lee aver the conspiracy claim against them must fail because a principal and agent cannot conspire with one another, as they are not separate persons for purposes of a conspiracy claim.

The intra-corporate immunity doctrine provides that, "there must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself." *Nedrich v. Jones*, 245 Va. 465, 473, 429 S.E.2d 201 (quoting *Bowman v. State Bank*, 229 Va. 534, 541, 331 S.E.2d 797 (1985)). This is because when an agent, director, or employee acts in the scope of her employment, i.e. acts as an agent of the corporation, then only a single entity exists, that is, the corporation. *Softwise, Inc. v. Goodrich*, 63 Va. Cir. 576, 577-78 (Roanoke 2004) (citing *Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699 (1987)). Therefore, whether Plaintiffs' conspiracy claims are precluded by the intra-corporate immunity doctrine depends on whether Ms. Oh and Mr. Lee were acting within the scope of their employment, as agents of Onyx and/or WSG, when they allegedly conspired to commit fraud.

Significantly, Plaintiffs have not pleaded that Ms. Oh and Mr. Lee were acting within the scope of their employments. Rather, Plaintiffs explicitly allege the opposite:

> [Ms. Oh and Mr. Lee], acting outside of the normal course of their corporate duties, conspired to commit the foregoing unlawful and fraudulent acts with evil motives, intent to injure, ill will and/or intent to defraud for their own personal benefit.

2d Am. Compl. ¶ 210. Whether Ms. Oh and Mr. Lee were, in fact, acting as agents of Onyx and/or WSG within the scope of their employment is a factual issue to be determined by the evidence. See *Fox*, 234 Va. at 428. Accordingly, on demurrer, the Court holds that Plaintiffs' civil conspiracy claims are not barred by the intra-corporate immunity doctrine.

Nevertheless, WSG and Ms. Oh argue that Plaintiffs also fail to allege that they have paid any actual damages to support their conspiracy claims, other than the amounts paid on the McWhorten Place and Winterset Court properties.

To maintain a common law claim of civil conspiracy, a plaintiff generally must prove that the underlying tort was committed. *Almy v. Grisham*, 273 Va. 68, 80, 639 S.E.2d 182 (2007); *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 300, 484 S.E.2d 892 (1997) ("For without proof of the underlying tort, there can be no conspiracy to commit the tort"). "The gist

of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means. *Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84 (1942). Therefore, the basis of a civil conspiracy action is the underlying wrong committed, which results in damage to the plaintiff. *Id.* Consequently, a civil conspiracy claim alleging a conspiracy to commit a tort includes the same elements of proof as the underlying tort. *Almy*, 273 Va. at 81.

No cause of action exists without a resulting injury, "and the damage produced must arise as the effective result of the conspiracy." *Gallop*, 179 Va. at 338. In Count IX, Plaintiffs allege that, due to Ms. Oh and WSG's concerted actions, they received claims from their insureds. Plaintiffs further allege that they "incurred monetary damages of at least $1,002,805.38, plus the costs, expenses, and attorneys' fees incurred in respect of said claims." 2d Am. Compl. at ¶ 206. Accepting as true the allegations stated in the complaint, the Court finds that Plaintiffs have sufficiently pleaded their conspiracy claims under Count IX and Count X so as to put Defendants on notice of the true nature of their claims and the damages they allege resulted therein. Accordingly, Mr. Lee's demurrer to Count X and WSG and Ms. Oh's demurrer to Counts IX and X are overruled.

*G. Unjust Enrichment against Ms. Oh and Onyx (Count VII)*

In Count VII, Plaintiffs plead a claim for unjust enrichment, alleging Ms. Oh and Onyx wrongly retained funds relating to the Rambling Road property. Unjust enrichment claims arise from the Virginia principle that "one person may not enrich himself unjustly at the expense of another." *Kern v. Freed Co.*, 224 Va. 678, 681 (1983) (internal citation omitted). Still, to state a cause of action for unjust enrichment, Plaintiffs must demonstrate the existence of a quasi-contract by alleging: (1) they conferred a benefit on Ms. Oh and Onyx; (2) Ms. Oh and Onyx knew of the benefit and should reasonably have expected to repay the benefit; and (3) Ms. Oh and Onyx accepted or retained the benefit without paying for its value. See *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834 (2008) (citing *Nedrich v. Jones*, 245 Va. 465, 476, 429 S.E.2d 201 (1993) ("One may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit.")).

On demurrer, Ms. Oh argues that Plaintiffs lack standing to seek restitution, because Wells Fargo Bank (who made the loans that allegedly were not paid off) or ING Bank (who made the loan that was to be used to satisfy the prior debt) possesses any claim to restitution. Ms. Oh further argues that Plaintiffs' unjust enrichment claim cannot survive demurrer, because a claim for an implied contract based on equitable principles, such

as an implied agreement to make restitution, does not exist when there is an express contract between the parties.

First, the Court finds that Plaintiffs have pleaded sufficient facts to allege standing to maintain their unjust enrichment claim. Plaintiffs allege that they issued a Title Insurance Policy to ING Bank, which insured, in part, that its Deed of Trust would be a first lien on the Rambling Road Property. As the complaint alleges, Plaintiffs are subrogated to ING Bank, their insured claimant, and, therefore, have standing to assert those rights belonging to ING.

Second, the Court agrees that Plaintiffs may plead alternative facts and theories in the same pleading if all such claims arise out of the same occurrence. See Va. Code Ann. § 8.01-281(A) (2013). The Court finds that Plaintiffs have adequately pleaded such alternative facts and theories to allow their unjust enrichment claim to survive demurrer. Notwithstanding, Defendants are correct that, "where there is an express and enforceable contract in existence which governs the rights of the parties, the law will not imply a contract in contravention thereof." *Royer v. Board of Supervisors*, 176 Va. 268, 280, 10 S.E.2d 876 (1933) (citing *Ellis & Myers Lumber Co. v. Hubbard*, 123 Va. 481, 501, 96 S.E. 754 (1918)). However, because the Court finds that Plaintiffs have alleged facts sufficient to support their alternative legal and equitable theories of recovery, the argument essentially raised by Ms. Oh is not appropriate for the Court to consider on demurrer. Accordingly, WSG and Ms. Oh's demurrer to Count VII is overruled.

## H. *Preliminary and Permanent Injunction (Count XI)*

In Count XI, Plaintiffs seek preliminary and permanent injunctions against WSG and Ms. Oh to require them to provide Plaintiffs with immediate access to three real estate settlement files at issue, as well as all records that are in any way related to the activities of WSG and Ms. Oh under the Agency Agreement. Plaintiffs seek equitable relief for Defendants' alleged wrongdoing, as set forth under other counts in the complaint, in the form of a temporary and permanent injunction. Although listed as a separate count in the complaint, the requested injunction is not a separate cause of action, but, instead, a form of relief sought. On demurrer, WSG and Ms. Oh contend that Plaintiffs' request for preliminary and permanent injunctions fails to meet the requisite pleading standard, because Plaintiffs fail to allege any facts regarding actual or imminent irreparable injury.

To pursue a request for injunctive relief, Plaintiffs must allege the "traditional prerequisites, i.e., irreparable harm and lack of an adequate remedy at law." *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 61, 662 S.E.2d 44 (2008) (quoting *Virginia Beach S.P.C.A., Inc. v. South Hampton Rds. Veterinary Assoc.*, 229 Va. 349, 354, 329 S.E.2d 10 (1985)).

Plaintiffs explicitly allege that they have suffered, and will continue to suffer, irreparable harm if they are not granted immediate and unconditional

access to WSG's records. Moreover, Plaintiffs allege that the records they seek are specific and unique, and, therefore, they are without an adequate remedy at law to recover this property. Considering the allegations set forth in the complaint as true, Plaintiffs are not precluded from seeking equitable relief via a temporary and permanent injunction at this time. Accordingly, Ms. Oh and WSG's demurrer to Count XI, Plaintiffs' request for injunctive relief, is overruled.

## I. *Attachment (Count XII)*

As a result of the Court's Order entered June 13, 2013, Ms. Oh and WSG's demurrer to Count XII seeking an attachment is moot.

## J. *Punitive Damages*

Mr. Lee demurs to Plaintiffs' request for punitive damages, raising three arguments: first, that Plaintiffs have not pleaded the presence of actual malice; second, Plaintiffs are not entitled to punitive damages because their claims arise from a contractual relationship; and third, Plaintiffs claim for punitive damages in the amount of $4 million exceeds the permissible amount of $350,000 dictated by statute.

Punitive damages are allowable only where there is misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others. *PGI, Inc.*, 265 Va. at 345 (citing *Baker v. Marcus*, 201 Va. 905, 909-10, 114 S.E.2d 617 (1960)). However, "where the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, [punitive damages] cannot be awarded, and compensatory damages only are permissible." *Id.* Notably, proof of actual malice is not necessary, and "[m]alice may be inferred from circumstances." *Id.* Nevertheless, "[n]o mere inadvertence, mistake, or accidental occurrence can be malicious, although negligent. . . ." *Id.*

Plaintiffs only seek punitive damages in relation to their claim of actual fraud against Ms. Oh and Mr. Lee. Responding to Mr. Lee's arguments, the Court first finds that Plaintiffs have alleged numerous facts as to Ms. Oh's and Mr. Lee's alleged intentional fraudulent and malicious conduct, which are sufficient to support Plaintiffs' claim for punitive damages. Second, because the Court holds that Plaintiffs' actual fraud claim is not precluded by the economic loss doctrine, Mr. Lee's second argument that Plaintiffs may not seek punitive damages for a contractual claim is inapplicable. Third, while Virginia Code § 8.01-38.1 places a $350,000 statutory cap on punitive damages, by the clear language of the statute, the cap pertains to the amount of punitive damages that may recovered by a successful party, not the amount that may be sought in the complaint and to which a jury may find a defendant liable. See Va. Code Ann. § 8.01-38.1 (2013).

## Conclusion

For the reasons set forth above, Mr. Lee's demurrer is sustained without prejudice as to Counts I and VI, overruled as to Counts V, X, and the claim for punitive damages, and sustained with prejudice as to Count II. WSG and Ms. Oh's demurrer is overruled as to Counts I, IV, V, VI, VII, VIII, IX, X, and XI, and sustained with prejudice as to Count II. Further, WSG and Ms. Oh's demurrer to Count XII is rendered moot by the Court's Order entered June 13, 2013.