Present:  All the Justices

DUNN CONSTRUCTION COMPANY, INC., ET AL.
                                        OPINION BY
v.  Record No. 081741          JUSTICE LAWRENCE L. KOONTZ, JR.
                                     September 18, 2009
RICHARD M. CLONEY

        FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
                    Leslie M. Osborn, Judge

    This appeal arises from a contract dispute between a building contractor and a property owner involving the construction of a new house.  During the construction of the house the contractor made allegedly fraudulent representations concerning certain repairs made by the contractor to the foundation wall of the house.  Ultimately at the trial of the case, in addition to a breach of contract claim, the circuit court permitted the property owner's claim for compensatory and punitive damages based on fraud to be submitted to the jury.  The dispositive issue we consider with regard to the jury's award of punitive damages is whether the fraudulent representations arose out of the contract or constituted an independent tortious breach of a common law duty.

                        BACKGROUND

    On September 12, 2005, Billy G. Dunn, part owner and as president of Dunn Construction Company, Inc. (collectively, "Dunn"), and Richard M. Cloney entered into a contract for the partial construction of a house in Mecklenburg County for

$172,106.  Dunn was to perform all of the major construction, leaving some of the interior finishing to be done by Cloney or another contractor.  The contract stated that "[a]ll work [was] to be completed in a workmanlike manner according to standard practices."  The contract further stated that because Dunn was not completing the house, only a partial certificate of occupancy permit could be obtained when the contract was completed.  The contract provided a schedule of specific progress payments and further provided that "any balance left on this contract will be paid" when the work specified in the contract was completed.

It is not disputed that Dunn initially failed to properly construct the front foundation wall in accord with standards required by the applicable Virginia building code.  As a result, while the house was still under construction, cracks appeared in the wall and a portion of it bowed out several inches.  Dunn undertook remedial efforts to repair the wall, adding additional steel reinforcing bars, commonly called "rebar," into the interior of the wall, which was constructed of concrete two-celled masonry units, commonly called "cinderblocks."  Dunn placed the rebar in one cell of each cinderblock along the face of the wall, approximately every 16 inches, and filled these cells with concrete to the level of where the wall had cracked.

2

After Dunn performed these repairs, Dunn told David Hash, the Mecklenburg County building inspector, that "the wall had been filled with concrete and rebar" but did not specify the amount of concrete or placement of rebar within the wall. During his post-repair inspection Hash identified a new hairline crack in the repaired foundation wall and directed that a structural engineer inspect the foundation and prepare a report as a condition of obtaining a temporary certificate of occupancy.

After completing repairs to satisfy various other conditions of obtaining the temporary certificate of occupancy, Dunn presented Cloney with a final bill. Cloney disputed certain items in the bill and indicated that he would prefer to place any final payment in escrow until after the inspection of the foundation wall. A heated exchange between Dunn and Cloney ensued, with Dunn insisting that he had completed the contract and was entitled to be paid. Eventually, Cloney gave Dunn a check for the amount Dunn claimed was due, and Dunn gave Cloney a written statement guaranteeing the wall's stability for ten years and averring that the wall had been repaired by placing rebar in every cell of the cinderblocks and filling the wall to its top with concrete.

When Dunn refused to pay for the inspection Hash had called for, Cloney hired Leon Morris, a structural engineer, who determined that the wall had not been filled with reinforced concrete or adequately reinforced with rebar, as Dunn had represented to Hash and Cloney. Morris found that between one-third to one-half of the cells had no reinforcement and that, as a result, the wall, both as originally constructed and following the attempted repair, did not meet the requirements of the building code. In Morris' opinion, the defect in the foundation wall could cause the house to collapse because this wall was "a candidate for a catastrophic failure."

On August 21, 2006, Cloney filed a complaint in the Circuit Court of Mecklenburg County against Dunn seeking damages under theories of breach of contract, negligence, and fraud.[1] Cloney alleged that the total cost to repair the foundation wall was $31,813.27 and that an additional $2,225 would be required to complete other obligations Dunn had

---

[1] Dunn also filed actions against Cloney by warrant in debt in the Mecklenburg County General District Court and by a complaint in the circuit court. Although the three cases ultimately were consolidated, the appeal before us does not involve issues arising from the claims made by Dunn against Cloney.

neglected to perform under the contract. Thus, for the alleged breach of the contract, Cloney claimed damages of $34,038.27. Likewise, Cloney sought to recover the same amount as compensatory damages for the alleged negligence and fraud.[2] Additionally, Cloney sought $100,000 in punitive damages for the alleged fraud. Dunn filed an answer admitting the general factual allegations of the complaint, but denying liability to Cloney under any theory of recovery.

A jury trial was held in the circuit court beginning on April 7, 2008 at which evidence in accord with the above-recited facts was received. At the conclusion of the evidence, the court reviewed the proffered instructions including instructions 21, 23 and 24 addressing the availability of punitive damages. Instruction 21 read, in relevant part:

> If you find that Richard M. Cloney is entitled to be compensated for his damages, and if you further believe by clear and convincing evidence that Billy G. Dunn and Dunn Construction Co., Inc. acted with actual malice toward Richard M. Cloney or acted under circumstances amounting to a willful and wanton disregard to Richard Cloney's rights, then you may also award punitive damages to Richard M.

---

[2] Cloney conceded at trial that he was entitled to only one recovery of compensatory damages regardless of the theory of recovery under which the award might be made, and the jury was so instructed.

Cloney to punish Billy G. Dunn and Dunn Construction Co., Inc. for their actions and to serve as an example to prevent others from acting in a similar way.

Instruction 23 informed the jurors that they "may only award punitive damages if [they] believe by clear and convincing evidence that there was a fraudulent misrepresentation regarding the repair to the foundation wall made by" Dunn. Instruction 24 stated that "[t]he burden is on the party charging fraud to prove it by clear and convincing evidence."

Counsel for Dunn noted his objections to "Instruction 21 in the sense that I don't believe there was any evidence . . . that [the misrepresentations] arose through malice or intentional or willful fraud . . . . [L]ikewise, on Instruction 23, it makes reference to punitive damages and I object to that on the same grounds." The circuit court then noted that Dunn "had [made] a general objection earlier to any punitive damages."

The jury returned its verdict for Cloney, awarding him $33,838.27 in compensatory damages, $200 less than he had claimed, and $25,000 in punitive damages. The jury also awarded interest on the compensatory damages of 6% from August 21, 2006 until the judgment was paid. Dunn objected to all

aspects of the verdict and made a motion that it be set aside, which motion the circuit court overruled.

Prior to entry of a final order confirming the jury's verdict, Dunn filed a motion for reconsideration. As relevant to the issues raised in this appeal, Dunn contended that the award of punitive damages was impermissible because "any misrepresentation, if any were demonstrated, arose out of contract, not tort." This was so, Dunn contended, because there was no evidence that Dunn did not intend to fulfill the obligations of the contract, but only that there may have been a misrepresentation as to the manner of performance. By permitting the jury to award punitive damages for fraud, Dunn contended that the circuit court impermissibly permitted Cloney to convert his breach of contract action into a tort action.

On June 2, 2008, the circuit court entered final judgment in favor of Cloney on the jury's verdict. In doing so, the court did not expressly address the assertions raised in the motion for reconsideration. We awarded Dunn this appeal.[3]

---

[3] Dunn did not assign error to the jury's award of compensatory damages and, accordingly, that aspect of the circuit court's judgment is not before us in this appeal.

DISCUSSION

The dispositive issue in this appeal is whether the circuit court erred in determining that there was sufficient evidence to permit the jury to find that Dunn had committed an act of fraud independent of the contractual relationship between Dunn and Cloney such that Cloney could maintain an action both for breach of contract and fraud.  Cloney concedes that he was entitled to only one award of compensatory economic damages whether the jury premised that award upon a finding of breach of contract, negligence, fraud, or some combination of those theories and that the jury's award of punitive damages could only be premised on the claim for fraud.  Cloney, as the prevailing party in a jury trial, is entitled to a review of the evidence in the light most favorable to his position.  See, e.g., Williams v. Dominion Tech. Partners, L.L.C., 265 Va. 280, 283, 576 S.E.2d 752, 753 (2003).  Nonetheless, even under this most favorable standard of review, we conclude that there was insufficient evidence of an independent act of fraud and, for the reasons that follow, we hold that the circuit court erred in permitting the jury to consider awarding punitive damages to Cloney.

" 'As a general rule, damages for breach of contracts are limited to the pecuniary loss sustained.' "  Kamlar Corp. v. Haley, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983)(quoting

8

*Wright v. Everett*, 197 Va. 608, 615, 90 S.E.2d 855, 860 (1956)); *accord* *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 156, 671 S.E.2d 132, 136 (2009). However, a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages, including, where appropriate, punitive damages. *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991). To avoid turning every breach of contract into a tort, however, we have consistently adhered to the rule that, in order to recover in tort, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Id.* (citing *Spence v. Norfolk & W. R. Co.*, 92 Va. 102, 116, 22 S.E. 815, 818 (1895)).

Our decision in *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344 (1998), exemplifies the application of this rule in construction cases and, thus, is instructive to the resolution of the present case. In *Richmond Metropolitan Authority* a municipal corporation entered into an agreement with a building contractor for the construction of a baseball stadium. *Id.* at 555, 507 S.E.2d at 345-46. During the course

9

of work, the contractor submitted progress payment requests falsely stating that it had completed the construction work according to the design specifications set forth in the contract. Id. at 555-56, 507 S.E.2d at 345. The contractor's deception was discovered more than five years after the completion of the work, barring a claim for breach of contract. The Authority filed an action against the contractor, alleging, inter alia, claims for actual and constructive fraud based on the false statements made to obtain progress payments. Id. at 556, 507 S.E.2d at 345-46. The circuit court entered summary judgment for the contractor on the fraud claims, finding that the contractor's alleged misrepresentations only breached duties assumed by contract and that nothing demonstrated the breach of any duty that was separate and independent from the contract. Id. at 557, 507 S.E.2d at 346.

On appeal, the Authority contended that the contractor's misrepresentations about its compliance with the contract and its "false applications under oath to induce payments" were "separate and independent wrongs that [went] beyond [the] contractual duties" and supported causes of action for actual and constructive fraud. Id. Affirming the judgment of the circuit court, we explained that the determination whether a cause of action sounds in contract or tort depends on the

10

source of the duty violated. Id. at 557-58, 507 S.E.2d at 346-47. Because "each particular misrepresentation by [the contractor] related to a duty or an obligation that was specifically required by the [c]ontract," we concluded that the contractor's misrepresentations did not give rise to a cause of action for actual fraud. Id. at 559, 507 S.E.2d at 347. Likewise, because the record failed to show that the contractor did not intend to fulfill its contractual duties when it entered into the agreement with the Authority, we held there was no claim for fraud in the inducement. Id. at 560, 507 S.E.2d at 348.

Cloney contends that the present case can be distinguished from Richmond Metropolitan Authority because the guarantee given by Dunn in exchange for Cloney making the final payment on the contract was used to procure a novation to the original contract and the false statement in the guarantee that the foundation wall had been properly repaired constituted a fraudulent inducement violative of a common law duty separate and apart from any duty arising under the contract. We disagree.

Under the contract, Dunn had a duty to construct the foundation wall "in a workmanlike manner according to standard practices." Clearly, the original wall was not constructed in accord with this duty, and Dunn was required to make repairs

11

to bring the wall in compliance with the applicable building code under that same duty. Dunn's false representation that he had made adequate repairs thus related to a duty that arose under the contract. The fact that the representation was made in order to obtain payment from Cloney does not take the fraud outside of the contract relationship, because the payment obtained was also due under the original terms of the contract. In this respect, the present case is indistinguishable from Richmond Metropolitan Authority.

Dunn's conduct in failing to properly construct the wall initially could be attributed to negligence. His subsequent misrepresentations to Cloney and Hash regarding the repairs undertaken, however, were unquestionably deliberate and false. We do not condone such misrepresentations. Nonetheless, as in Richmond Metropolitan Authority, 256 Va. at 560, 507 S.E.2d at 348, we cannot permit "turning every breach of contract into an actionable claim for fraud" simply because of misrepresentations of the contractor entwined with a breach of the contract.[4]

---

[4] Because we have determined that the fraud did not arise from the violation of a common law duty independent of the contract, we need not consider Dunn's further argument that there was insufficient evidence that Dunn's conduct was so

CONCLUSION

For these reasons, the judgment of the circuit court confirming the award of punitive damages for fraud will be reversed and final judgment for Cloney limited to the award of compensatory damages with interest from August 21, 2006 will be entered here.

<u>Reversed in part and final judgment</u>.

---

wanton, oppressive or malicious as to warrant the imposition of punitive damages.