# COURT OF APPEALS OF VIRGINIA

### Record No. 0846-25-2

PRECISION & PERFORMANCE AUTO CARE, LLC, ET AL.
v.
JAMES RIVER PETROLEUM, INC.

Present: Chief Judge Decker, Judges Ortiz and Callins
Argued at Richmond, Virginia

Opinion Issued May 12, 2026

## FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Spencer M. Cox (Michael H. Brady; P. Thomas DiStanislao; Whiteford, Taylor & Preston L.L.P., on briefs), for appellants.

J.P. McGuire Boyd, Jr. (Williams Mullen, on brief), for appellee.

## PUBLISHED OPINION BY
## CHIEF JUDGE MARLA GRAFF DECKER

This case stems from an award of damages for breaches of contract, fraud, tortious interference with a contract, and business conspiracy. James River Petroleum, Inc. ("James River"), brought the suit against Precision & Performance Auto Care, LLC ("P&P Auto Care"), Leon Blount, Richard Walker Logistics, LLC ("RW Logistics"), Richard Walker, SS&B Distributor, LLC ("SS&B"), and Sharon Britt. The trial court found in favor of James River on all of its claims, and P&P Auto Care and its co-defendants appeal. For the reasons that follow, we hold the trial court acted within its discretion by denying the appellants' motion for a continuance. We further hold the court erroneously failed to apply the source-of-duty rule to preclude certain tort claims, and we reverse on the fraud and business-conspiracy counts. Finally, we reject the appellants' challenges to the sufficiency of the evidence and the application

of the burden of proof in the trial court. Consequently, we affirm in part, reverse in part, and remand the case to the trial court.

BACKGROUND[1]

James River, a fuel distributor, entered into distribution agreements with commercial and government customers. Additionally, it offered credit cards to these customers that were "accepted at merchants across the country" for anything the participating merchants sold, including fuel and other goods and services. Under this arrangement, the cardholder would make a purchase from a participating merchant, and the merchant would be paid by WEX Bank. The bank would then bill James River for the amount of the transaction. James River in turn would pay WEX Bank and invoice the cardholder for the amount paid. The contracts were terminable at will.

P&P Auto Care[2] and RW Logistics applied for and were issued such cards. For a time, they complied with the terms of service governing the use of the cards. But by the end of 2023, they had fallen behind in their payments, accruing outstanding balances. James River identified a sharp increase in purchases by these cardholders. It concluded that the two entities had used the issued cards to make fraudulent purchases from one of them, P&P Auto Care,[3] as well as from a third company, SS&B. James River believed that when WEX Bank paid the transaction

---

[1] "On appeal from a judgment following a bench trial," the reviewing court "'consider[s] the evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party below,'" in this case, James River. *See MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 457 (2017) (quoting *Gov't Emps. Ins. Co. v. United Servs. Auto. Ass'n*, 281 Va. 647, 655 (2011)).

[2] Blount's business entity was incorporated as "Precision and Performance Auto Care LLC," referred to herein as "P&P Auto Care." Britt operated a different entity called "Precision and Performance Auto," an automotive dealership, which was not a party to this suit.

[3] James River's chief financial officer described the action as "the cardholder and the merchant, [who were] one in the same, swiping their own cards," which "raise[d a] red flag[]."

amounts to these merchants, it was for goods and services not provided. The two cardholders ran up large balances, for which James River was required to pay the bank. When P&P Auto Care and RW Logistics did not pay the balances, they effectively diverted funds belonging to James River. In total, P&P Auto Care and RW Logistics defaulted on balances of more than half of a million dollars.

James River suspended the cards and sued P&P Auto Care, RW Logistics, and SS&B. In addition, it sued Blount (the sole owner of P&P Auto Care), Walker (the sole owner of RW Logistics), and Britt (the sole owner of SS&B). James River alleged that Blount and Walker fraudulently used the cards in a conspiracy with Britt. The suit set forth claims of breach of contract, fraud, tortious interference with a contractual relationship, and business conspiracy.[4]

The day before trial and again on the morning of trial, the defendants expressed dissatisfaction with their attorney and moved for a continuance. The court denied the motion.

At trial, James River presented testimony from its chief financial officer, Blount, Walker, and Britt. After the close of the evidence, defense counsel made a motion to strike, arguing the evidence was insufficient to support the claims. The court took the matter under advisement but ultimately ruled in favor of James River on all counts.

The appellants filed a motion to suspend, modify, or vacate the final order. They argued that the source-of-duty rule barred liability for fraud and business conspiracy. The trial court denied the motion.

---

[4] James River brought breach-of-contract claims against P&P Auto Care, RW Logistics, and Walker, a fraud claim against P&P Auto Care, Blount, RW Logistics, and Walker, a tortious-interference claim against SS&B and Britt, and a business-conspiracy claim against all of the appellants.

ANALYSIS

I. Motion for Continuance

The appellants contend that the trial court abused its discretion by denying their motion for a continuance.

The day before trial, the appellants made a motion for a continuance so they could hire a different attorney. The morning of the scheduled trial, Blount stated their attorney had not been in contact with them for six months. Defense counsel stated that his clients were "not ready to go forward" due to their dissatisfaction with him.[5] Even so, counsel explained that he was prepared to present "the best defense that they ha[d] available." James River opposed the requested continuance. The trial court refused to continue the case.

A trial court's decision on a motion to continue is reviewed for an abuse of discretion. *Va. Fuel Corp. v. Lambert Coal Co.*, 291 Va. 89, 104-05 (2016). The abuse-of-discretion standard—a "bell-shaped curve of reasonability governing our appellate review"—"rests on the venerable belief that the judge closest to the contest is the [one] best able to discern where the equities lie." *Thomas v. Commonwealth*, 82 Va. App. 80, 118 (2024) (en banc) (quoting *Commonwealth v. Barney*, 302 Va. 84, 94 (2023)).

And review of a trial court's denial of a motion for a continuance is considered in light of the circumstances of the particular case. *Va. Fuel Corp.*, 291 Va. at 104. To prevail on appeal, the complaining party must demonstrate both an abuse of discretion and prejudice. *Id.* at 104-05.

This case was pending for about eleven months before trial. The scheduling order was entered more than three months prior to trial, and the parties received notice of the trial date. *See generally Francis v. Francis*, 30 Va. App. 584, 589-91 (1999) (explaining that notice to counsel is imputed to parties unless counsel has withdrawn with leave of the court after notice to the

---

[5] A different attorney represents the appellants before this Court.

client).  As such, they had "ample opportunity" to hire new counsel before trial.  *See Autry v. Bryan*, 224 Va. 451, 454 (1982).  The day before trial, the court learned that the appellants sought a continuance due to dissatisfaction with their attorney.  Although they felt that a different attorney would present a better defense on their behalf, their counsel stated that he was prepared to proceed with trial that day.  Under these circumstances, the trial court did not abuse its discretion by denying the motion to continue.[6]  *See Wroblewski v. Russell*, 63 Va. App. 468, 484-86 (2014) (affirming the denial of a motion to continue after the party's attorney withdrew for medical reasons).

## II.  Source-of-Duty Rule

The appellants argue that the fraud and business-conspiracy claims are barred under the source-of-duty rule.[7]

We begin our analysis with the basic principle that tort claims "aris[ing] from [a] contractual relationship . . . may not be pursued as independent causes of action outside the breach of contract context."  Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 2.3[A] (7th ed. 2020).  "To avoid turning every breach of contract into a tort," Virginia

---

[6] The appellants protest that the option given by the trial court to proceed *pro se* was "no choice at all" because an individual cannot represent a corporation in a *pro se* capacity.  *See Hawthorne v. VanMarter*, 279 Va. 566, 576 (2010); *Culpeper Nat'l Bank v. Tidewater Improvement Co.*, 119 Va. 73, 79 (1916); *see also* Va. Sup. Ct. R., P. 6, § I.  Our conclusion that the trial court did not abuse its discretion accounts for this colloquy, as well as the fact that Blount, Walker, and Britt were named in the suit and were permitted to proceed *pro se* in their individual capacities.  Further, "having held that the trial court did not abuse its discretion in denying the continuance, we need not reach the issue of whether appellant[s were] prejudiced by the denial."  *Reyes v. Commonwealth*, 68 Va. App. 379, 389 n.6 (2018), *aff'd*, 297 Va. 133 (2019).

[7] Even though the appellants' counsel did not raise the source-of-duty rule before or during trial, the appellants raised it in the motion to suspend, modify, or vacate the final order at a time when the trial court could appropriately resolve the issue.  *See* Rule 5A:18.  The motion was "made in time [for the court] to do something about" the issue, and the trial court denied the motion.  *See Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

"consistently adhere[s] to the [source-of-duty] rule." *MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 458 (2017) (quoting *Dunn Constr. Co. v. Cloney*, 278 Va. 260, 267 (2009)). Under this rule, "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."[8] *Id.* (quoting *Dunn Constr.*, 278 Va. at 267). This principle is known as the "source-of-duty rule" because the determinative question is whether the source of the duty violated is common law, a contract, or both. *See Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 81-82 (2019). The question of whether a claim sounds in tort as well as contract law is "a pure question of law to be reviewed de novo." *Id.* at 79 (quoting *Brown v. Jacobs*, 289 Va. 209, 215 (2015)).

A breach of contract will not ordinarily support tort liability, but sometimes contract and tort damages overlap. "[A] single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages, including, where appropriate, punitive damages."[9] *Dunn Constr.*, 278 Va. at 266-67.

---

[8] This concept is related to the "'economic loss doctrine,' which serves as a remedy-specific application of the source-of-duty rule." *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 98 (2019) (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 361 (2010)). Under the economic-loss doctrine, "claims for 'damages [that] were within the contemplation of the parties when framing their agreement' . . . remain 'the particular province of the law of contracts.'" *Id.* at 98-99 (quoting *Abi-Najm*, 280 Va. at 360).

[9] Despite the possibility of overlap, Virginia has historically been reluctant to allow tort claims to be brought alongside claims for breach of contract. *See, e.g.*, *Tingler*, 298 Va. at 90-93 (holding that the source-of-duty rule applied to preclude negligence claims after the contractor failed to build the home in workmanlike manner as required by the contract); *MCR Fed.*, 294 Va. at 459-60 (holding that the misrepresentation related to the contract even though the duty breached was a condition precedent to closing rather than one specifically in the contract); *Dunn Constr.*, 278 Va. at 268 (holding that the misrepresentation occurred within the contractual relationship because, although it involved repairs, those repairs related back to a duty that arose under contract); *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 559 (1998) (holding that the case sounded solely in contract, not tort, when the construction company "misrepresented its compliance" with certain design specifications required by contract); *Foreign*

The Supreme Court of Virginia has identified three factors that are useful in conducting this inquiry: the level of blame, the relationship between the parties, and the source of the duty breached. *See Tingler*, 298 Va. at 81-84.

The first factor, the level of blame, sets a minimum threshold required for a separate tort claim. *See id.* at 84. The Supreme Court has recognized "escalating degrees of blameworthiness."[10] *Id.* at 83. These distinctions are important because traditionally a claim sounds solely in contract if it is based on "an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (1998). In contrast, a tort claim based on an affirmative wrongdoing may not be so limited. *See Tingler*, 298 Va. at 84.

The second factor, the nature of the relationship, looks at whether the parties owe each other any duties outside the contract. *Id.* at 81. This part of the analysis focuses on whether the parties have a "special relationship[]" that imposes a duty of care "'irrespective of the contract.'" *Id.* at 81, 82 n.11 (quoting *Richmond Metro. Auth.*, 256 Va. at 558). In this way, courts attempt to answer the question of whether the duty breached arose within the contractual relationship or outside of it.

The third factor looks at whether the duty breached arose solely from a contract. *Id.* at 82. "[T]ort liability cannot be imposed upon a contracting party for failing to do a contractual

---

*Mission Bd. of S. Baptist Convention v. Wade*, 242 Va. 234, 241 (1991) (affirming the dismissal of a tort claim based solely on the defendant's "negligent breach of a contractual duty").

[10] "Nonfeasance is '[t]he failure to act when a duty to act exists.'" *Tingler*, 298 Va. at 84 (alteration in original) (quoting *Nonfeasance*, *Black's Law Dictionary* (11th ed. 2019)). "Misfeasance is '[a] lawful act performed in a wrongful manner' or, '[m]ore broadly, a transgression or trespass.'" *Id.* (alterations in original) (quoting *Misfeasance*, *Black's*, *supra*). "And malfeasance is an affirmative, 'wrongful, unlawful, or dishonest act' . . . ." *Id.* (quoting *Malfeasance*, *Black's*, *supra*). This is not to say that all tort claims require a showing of malfeasance. *See, e.g.*, *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 618-20 (2019).

- 7 -

task when no common-law tort duty would have required him to do it anyway . . . ." *Id.* Circumstances relevant to this analysis include the timing of the misrepresentation and the nature of the damages. *See id.* at 82 n.11. When a party enters into a contract intending to breach it, the breach can be "actionable as an actual fraud." *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677 (1985); *see Tingler*, 298 Va. at 82 n.11 (noting the Supreme Court has not held that the source-of-duty rule applies to bar "a claim for actual fraudulent inducement, which involves a new contract induced with a third party"); *see also Harrell v. DeLuca*, 97 F.4th 180, 190 (4th Cir. 2024) ("Virginia law 'distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract.'" (quoting *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 447 (4th Cir. 1990))). Damages alleged can be a useful guidepost as well—if they are the same in contract and tort actions, courts assume that the contract is the sole source of the duty owed. *See Tingler*, 298 Va. at 82 n.11, 98-99.

We examine these factors in relation to each of the appellants.

### A. P&P Auto Care, RW Logistics, and Walker

In this case, there is no question that using the credit cards to buy nonexistent goods and services constituted an affirmative wrongdoing, leaving open the possibility that the source-of-duty rule does not preclude any of the tort claims. The representations occurred in the form of charges to the credit cards for the supposed payment of goods and services that were never received and invoices supporting those charges. The wrongdoing was of an affirmative nature, leading to the question of whether it "ar[ose] solely out of a contractual relationship." *Id.* at 82 n.11. The parties' relationship to James River was solely contractual. Although the misrepresentations were not based on a duty that was encompassed by the contract terms, James River incurred damages solely because of the breaches of contract. The damages were the same

for the breach-of-contract and tort claims. Taken together, these considerations compel application of the source-of-duty rule to bar the tort claims here that arise out of the breaches of contract.

James River "seek[s] to establish a tort action based solely on [fraudulent] breach of a contractual duty with no corresponding common law duty." *See Foreign Mission Bd. of S. Baptist Convention v. Wade*, 242 Va. 234, 241 (1991); *see also Richmond Metro. Auth.*, 256 Va. at 555-60 (holding that the contractor's "false applications under oath" made during the course of the contract to obtain payment from the owner amounted to a breach-of-contract claim, not fraud in the inducement). The source-of-duty rule precludes the claims for fraud and business conspiracy against P&P Auto Care, RW Logistics, and Walker. For these reasons, the trial court erred by denying the appellants' motion to modify the relevant provisions of the final order.

## B. Blount

Blount stands in a slightly different posture than Walker because, unlike Walker, he did not personally guarantee the contract with James River.

Even so, "an agent acting within the contractual scope of employment shares its principal's legal identity." *Allegheny Constr. Co. v. Town of Christiansburg*, 86 Va. App. 321, 338 (2025) (citing *Fox v. Deese*, 234 Va. 412, 427 (1987)). Based on this shared identity, the source-of-duty rule applies equally to a business entity that has entered into a contract and its agents acting within the scope of their employment.[11] *Cf. Miller v. Quarles*, 242 Va. 343, 347-48

---

[11] This shared identity between an agent and its principal can affect tort liability in both directions. Just as the source-of-duty rule protecting the principal or employer can extend to protect an agent or employee, the employer may be liable for an employee's tortious acts under the doctrine of respondeat superior. *See H.C. v. Potomac Hosp. Corp. of Prince William*, 81 Va. App. 1, 17 (2024) (explaining that the doctrine of respondeat superior may apply if the employee "was performing his employer's business and acting within the scope of his employment" (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 335 (2018))).

(1991) (holding that the agent who acted negligently within the scope of his employment shared tort liability with the principal entity).

In other words, liability for fraud and business conspiracy does not attach to an agent for a principal's breach of contract. Blount was not liable for actions he took within the scope of his employment as an agent of P&P Auto Care. Blount's wrongdoing—using the James River credit card issued to P&P Auto Care for nonexistent goods and services and presenting false invoices for services he did not provide—was within the scope of his employment. *See generally H.C. v. Potomac Hosp. Corp. of Prince William*, 81 Va. App. 1, 21 (2024) (recognizing that a bank teller who knowingly deposited a forged check acted within the scope of employment because the act was "committed . . . as part of [the] 'normal function' of [the] job" (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 338 (2018))). So the source-of-duty principle bars the claims for fraud and business conspiracy against Blount. The trial court erred by denying the appellants' motion to modify the provisions of the final order pertaining to those claims.

### C. SS&B and Britt

Finally, we address the business-conspiracy claims against SS&B and Britt. These fail because the tort for business conspiracy requires more than one conspirator and cannot be established by showing a conspiracy to breach a contract, unless the breach involved an independent duty.

SS&B and Britt, as a principal entity and an agent, "are not separate persons for purposes of the tort." *See Allegheny Constr.*, 86 Va. App. at 339 (citing *Fox*, 234 Va. at 428-29). And a suit for "civil conspiracy 'cannot be maintained in a suit involving a single defendant where the same underlying torts are also asserted by separate counts against the same defendant.'" *Gelber v. Glock*, 293 Va. 497, 535 (2017) (quoting *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795,

804 (D. Utah 1988)). Simply put, SS&B and Britt, treated together as a single entity for legal purposes when considering a tort claim, could not conspire with themselves.

Although the breach-of-contract claims against P&P Auto Care, RW Logistics, and Walker remain unchallenged, "a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish" the tort of business conspiracy. *Station #2, LLC v. Lynch*, 280 Va. 166, 174 (2010). In other words, since the breaches of contract here did not involve an independent duty arising outside of a contract, they were insufficient to support a claim for business conspiracy.

For these reasons, the trial court erred by denying the motion to modify the provisions of the final order pertaining to the business-conspiracy claims against SS&B and Britt.

### III. Sufficiency of the Evidence

The appellants argue that the trial court should have struck the tortious-interference claims for lack of proof that SS&B and Britt caused nonpayment by P&P Auto Care or RW Logistics.[12] They contend that the record did not support the trial court's finding that SS&B or Britt created invoices that misrepresented the charges on the cards as legitimate. The appellants also suggest that the evidence did not support a finding that any actions by SS&B or Britt caused either cardholder to fail to pay the debts accrued on their cards.

The standard of review for sufficiency challenges is well established. "The reviewing court must examine the evidence in the light most favorable to . . . the prevailing party at trial, and the trial court's judgment will not be disturbed unless it is plainly wrong or without evidence

---

[12] In light of our other holdings in this case, we do not reach the appellants' remaining challenges to the fraud claims. *See generally Rebh v. Cnty. Bd.*, 303 Va. 379, 382 (2024) (per curiam) ("Our doctrine of judicial restraint requires appellate courts to decide cases 'on the best and narrowest ground available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

to support it." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022) (alteration in original) (quoting *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 90 (2012)).

And a determination regarding the credibility of the witnesses and the weight to be given their testimony is a finding of fact also entitled to deference on appeal under the plainly wrong standard. *See id.* But "when an adverse party is called and examined by an opposing party, the latter is bound by all of the former's testimony that is uncontradicted and is not inherently improbable." *Colas v. Tyree*, 302 Va. 17, 26 (2023) (quoting *Economopoulos v. Kolaitis*, 259 Va. 806, 812 (2000)).[13] The Supreme Court of Virginia has "repeatedly rejected the notion that the 'positive testimony' of an adverse party witness—specific factual testimony—can be overcome by other evidence, such as inferences drawn from primary facts, or 'negative' testimony from a witness." *Id.* at 28 (quoting *Ragland v. Rutledge*, 234 Va. 216, 219 (1987)).

Applying these legal principles, we consider the sufficiency challenges. For tortious interference with contract rights, the "ordinary burden in civil actions of preponderance of the evidence" applies. *Cf. Wyatt v. McDermott*, 283 Va. 685, 700 (2012) (applying this burden in the context of a claim for tortious interference with parental rights). *See generally* Model Jury Instrs.—Civ. No. 40.250 (requiring proof "by the greater weight of the evidence" in a finding instruction for tortious interference with a terminable-at-will contract). To establish a claim of tortious interference, a plaintiff must show:

> (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interfer[e]r; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted.

---

[13] In other words, in the context of "an adverse party witness . . . , a reviewing court does not look to the witness's credibility globally, as it would in an ordinary sufficiency of the evidence case." *Colas*, 302 Va. at 28. Instead, the "court . . . examine[s] the testimony of a party called as a witness by the opposing party and . . . sift[s] what is uncontradicted from what is contradicted (or inherently incredible)." *Id.*

*Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 558-59 (2011) (quoting *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 145 (2009)).  In addition, "when a contract is *terminable at will*, a plaintiff . . . must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed '*improper* methods.'"  *Id.* at 559 (quoting *Duggin v. Adams*, 234 Va. 221, 226-27 (1987)).  "[I]nterference is considered 'improper' if it is illegal, independently tortious, or violat[ive of] an established standard of trade or profession."  *Id.*  Improper interference can be established by a showing of a violation of law or a common-law rule.  *Id.*  Other examples of improper interference include "violence, threats[,] . . . intimidation, bribery, unfounded litigation, fraud, misrepresentation[,] . . . deceit, defamation, duress, undue influence, misuse of inside or confidential information, . . . breach of a fiduciary relationship," or "unethical conduct."  *Id.* (quoting *Duggin*, 234 Va. at 227-28).

The appellants argue that the credit card contracts were at-will agreements and, as such, James River, to recover for tortious interference, had to prove the appellants used improper methods.  They also challenge the sufficiency of the evidence establishing that any improper methods used by SS&B and Britt triggered the end of the contract.

In the latter half of 2023, across the accounts of James River's hundreds of card customers, the monthly charges incurred for nonfuel purchases increased from a "few thousand dollars" to around half a million dollars.  P&P Auto Care and RW Logistics were responsible for about 99% of the nonfuel charges incurred during this time.  In contrast, for the entire year of 2022, the two had combined fuel and nonfuel purchases amounting to $275,000.  The suspicious purchases were made from SS&B and "Precision and Performance Auto," both of which were owned by Britt.  The transactions were made at all times of the day and night, and many were for duplicative amounts for different services.  As for fuel purchases made, those too showed

duplicative amounts—a fact that James River found particularly damning because they listed the same number of gallons of fuel purchased "to the thousandth of a decimal" for exactly the same price per gallon across a period of months. As a fuel distributor, James River knew fuel prices varied, and it had never seen such a pricing pattern.

Evidence also revealed a relationship between the appellants that went beyond purchaser-vendor. Blount and Britt jointly owned a residence in which they both lived. Walker resided on the same street, and his cousin had worked as Britt's supervisor for several years. In addition, P&P Auto Care's website listed Britt as a contact for the company.

Joseph Willis, chief financial officer (CFO) for James River, testified that as a certified public accountant, he had training and experience with fraud investigations. He explained that "red flags" for fraud include a "dramatic change in purchasing history," a "ramp-up" of purchase "activity over a very short period of time," "duplicative transactions," and "self-dealing," all of which were present here.

Blount and Britt testified at trial.[14] Blount explained that he bought products and services from SS&B. When questioned about particular purchases, Blount said they were legitimate. He also testified that he could not verify all charges on the card because some of them were made by his contractors.

When questioned about certain invoices, Britt agreed something was "off." She testified, however, that the invoices were prepared by her administrative staff and that any errors in them were merely clerical.

The trial court heard different explanations for the credit card charges made by P&P Auto Care and RW Logistics. Blount and Britt testified as adverse party witnesses. Blount stated that

---

[14] Walker also testified, explaining that he was not involved in the day-to-day management of RW Logistics. He claimed that for this reason he could not verify the legitimacy of any of the suspicious charges on his James River-issued credit card.

the payments in question were legitimate. Britt likewise testified that the invoices prepared by SS&B were legitimate, but she could not explain the discrepancies because she did not personally prepare them. Although James River was bound by the uncontradicted parts of their testimony as adverse party witnesses, the relevant portions of their testimony were rebutted by other positive evidence. *See generally J&R Enters. v. Ware Creek Real Est. Corp.*, 80 Va. App. 603, 610 (2024) ("The plaintiffs are bound by the testimony from this adverse party witness unless it is contradicted or inherently incredible or improbable." (quoting *Colas*, 302 Va. at 31)). In particular, positive evidence showing the invalidity of the invoices included the pattern of the charges, the repetitive nature of the charges, and the testimony of James River's CFO that certain charges were incredible based on the impossibility of the variations—or lack thereof—in the fuel prices charged.

Between Britt's two business entities, she was responsible for the vast majority of the charges incurred by P&P Auto Care and RW Logistics on the James River-issued cards in the last half of 2023. Again, the transactions at issue were made at all times of day and night, and many were for duplicative amounts for entirely different services. James River found some of the duplicative fuel purchases particularly unbelievable because they showed exactly the same number of gallons of fuel bought at identical per-gallon prices over multiple dates.

Based on the pattern of spending and the pattern of the payments made to SS&B and Britt's other business entity (Precision and Performance Auto), a reasonable factfinder could determine by a preponderance of the evidence that Britt, through SS&B, misrepresented the goods and services provided to P&P Auto Care and RW Logistics. Further, the finder of fact could reasonably conclude that these misrepresentations, as part of concerted actions designed with the other appellants, led to the breaches of contract.

IV. Burden of Proof Applied by the Trial Court

The appellants argue that the trial court erred by placing the burden on them to prove that goods and services were actually exchanged.

The trial court found that James River "established by a preponderance of the evidence that . . . SS&B and . . . Britt committed tortious interference with two contracts." It also noted that SS&B and Britt "could not prove by a preponderance of the evidence that the goods and services were provided as stated in the invoices."[15] The appellants suggest that the order's language about SS&B and Britt's failures to prove that the goods and services were actually provided necessarily means that the trial court erroneously placed the burden of proof on the defense.

"[N]othing is better settled than that everything is to be presumed in favor of the correctness of the rulings of a court of competent jurisdiction, when brought under review in an appellate tribunal, until the contrary is shown." *Commonwealth v. Jackson*, ___ Va. ___, ___ (Nov. 20, 2025) (quoting *Early v. Commonwealth*, 86 Va. 921, 925 (1890)). In other words, "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Lisann v. Lisann*, 304 Va. 242, 260 (2025) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). "The presumption holds true even if a trial court does not specifically articulate its factual findings." *Id.* (noting that without "a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law'" (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015))). And in conducting our review, this Court does "not fix upon isolated statements of

---

[15] Similarly, regarding the fraud claim against P&P Auto Care, Blount, RW Logistics, and Walker, the court found that James River established the claim "by clear and convincing evidence." The court added that the "[d]efendants did not establish by clear and convincing evidence that the goods or services were provided as stated in the invoices."

- 16 -

the trial judge taken out of the full context in which they were made[] and use them as a predicate for holding the law has been misapplied." *Rainey v. Rainey*, 74 Va. App. 359, 378 (2022) (quoting *Yarborough*, 217 Va. at 978); *see Coward v. Wellmont Health Sys.*, 295 Va. 351, 363 n.11 (2018) (quoting *Yarborough*, 217 Va. at 978).

The trial court order set out the correct standard of proof for tortious interference with contractual rights. *See Wyatt*, 283 Va. at 700. The fact that it followed the correct standard of proof with the statements that SS&B and Britt did not prove their defenses does not negate its correct statement of the law or clearly show that the court improperly shifted the burden of proof. In addition to the language in the order isolated by the appellants, the trial court found that the appellants "intentionally created false invoices." When considered in its entirety, this record does not rebut the presumption of correctness. *See Commonwealth v. Brawner*, ___ Va. ___, ___ (Dec. 18, 2025). Rather, the record taken as a whole reflects that the trial court found that James River proved by a preponderance of the evidence that the appellants worked together to make purchases on the cards for nonexistent goods and services. The court then simply noted that the appellants had not disproved that finding. Therefore, we presume the trial court applied the law correctly to the facts and conclude it appropriately applied the burden of proof.

CONCLUSION

The trial court acted within its discretion by denying the appellants' motion for a continuance. The court improperly failed, however, to apply the source-of-duty rule to preclude the fraud and business-conspiracy claims. As a result, the trial court erred by denying the appellants' motion to modify the provisions of the final order pertaining to those claims. And a review of the record in its entirety reflects positive evidence supporting the trial court's findings that SS&B and Britt misrepresented the transactions made and those misrepresentations led to the breaches of contract. Finally, the court correctly applied the burden of proof when

determining the tortious-interference claim.  For these reasons, we affirm in part, reverse in part, and remand with directions to dismiss the fraud and business-conspiracy counts.

*Affirmed in part, reversed in part, and remanded.*